J-A20021-20

2020 PA Super 270

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CURTIS DAVIS :
:
Appellant : No. 1665 WDA 2019

Appeal from the Order Entered November 12, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-MD-0005343-2019

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

OPINION BY OLSON, J.: FILED NOVEMBER 19, 2020

Appellant, Curtis Davis, appeals from an order entered on November 12, 2019, denying his motion to dismiss charges he alleges the Commonwealth pursued in violation of the principles of compulsory joinder and his rights against double jeopardy. We affirm, but remand with instructions.

The underlying facts and procedural history of this case are as follows. On September 21, 2019, officers with the City of Pittsburgh Police Department charged Appellant by criminal complaint with one count of fleeing or attempting to elude a police officer (fleeing or eluding),[1] a third-degree

_____

[1] 75 Pa.C.S.A. § 3733(a).

felony,[2] and six related summary traffic offenses.[3]  A preliminary hearing was held on October 3, 2019 in the Pittsburgh Municipal Court.[4]  During the hearing, the charging officer, Officer Nicholas Bonaccorise, testified.  N.T. Preliminary Hearing, 10/3/19, at 3-9.  At or near the conclusion of the hearing, Magisterial District Judge ("MDJ") Thomas Caulfield dismissed the charge of fleeing or eluding, after finding a lack of prima facie evidence, but subsequently stated that he would "take jurisdiction [of the remaining summary offenses]."  Id. at 12.  Thereafter, MDJ Caulfield convicted Appellant of the six summary offenses and imposed fines.  Id.  MDJ Caulfield did so even though the prosecutor did not request him to exercise jurisdiction and in fact, attempted to withdraw the six summary offenses.  Id. at 13.

Later that same day, the Commonwealth re-filed all of the above-listed charges against Appellant.  The re-filed complaint was presented to, and

_____

[2] In the criminal complaint, the Commonwealth graded Appellant's fleeing or eluding charge as a third-degree felony pursuant to 75 Pa.C.S.A. § 3733(a.2)(2)(i)-(iii).

[3] The six summary offenses included one count of driving an unregistered vehicle (75 Pa.C.S.A. § 1301(a)); one count of driving with operating privileges suspended or revoked (75 Pa.C.S.A. § 1543(a)); one count of reckless driving (75 Pa.C.S.A. § 3733(a)); and three counts of turning movements and required signals (75 Pa.C.S.A. § 3334(a)).

[4] As will be discussed in detail below, the Pittsburgh Municipal Court is its own unique entity in that it does not have an elected magisterial district judge. Instead, the president judge of the Fifth Judicial District assigns, on a rotating basis, Allegheny County magisterial district judges to hear all matters before the Pittsburgh Municipal Court.

approved by, MDJ Sokoian Eichler who was also sitting as an MDJ in the Pittsburgh Municipal Court. The parties again appeared at the Pittsburgh Municipal Court for a preliminary hearing on October 17, 2019, but this time, they were before MDJ Mikhail Pappas. During the hearing, the Commonwealth requested a postponement. Appellant's counsel, however, objected and argued that MDJ Pappas should dismiss the re-filed charges because the Commonwealth failed to comply with Pa.R.Crim.P. 544,[5] which sets forth the procedures for reinstitution of charges following their withdrawal or dismissal. In addition, Appellant's counsel stated:

> Your Honor, it is our position today that [Appellant] is currently serving a sentence [which was imposed on October 3, 2019 by MDJ Caulfield. On October 3, 2019, the] fleeing [charge] was dismissed and the other traffic violations were moved to traffic

_____

[5] Pennsylvania Rule of Criminal Procedure 544 states:

> (A) When charges are dismissed or withdrawn at, or prior to, a preliminary hearing, or when a grand jury declines to indict and the complaint is dismissed, the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the re-filing of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges.
>
> (B) Following the re-filing of a complaint pursuant to paragraph (A), if the attorney for the Commonwealth determines that the preliminary hearing should be conducted by a different issuing authority, the attorney shall file a Rule 132 motion with the clerk of courts requesting that the president judge, or a judge designated by the president judge, assign a different issuing authority to conduct the preliminary hearing. The motion shall set forth the reasons for requesting a different issuing authority.

Pa.R.Crim.P. 544.

court where [Appellant] is now currently serving a sentence by paying the fines on [it.] So[,] it is our position today that[,] in order to go forward with this re[-]file, the Commonwealth should appeal [the October 3, 2019 judgment of sentence] as [Appellant] is currently serving a sentence [following those convictions].

N.T. Hearing, 10/17/19, at 2-3. In response, the Commonwealth argued that MDJ Caulfield lacked jurisdiction to adjudicate Appellant's six summary offenses because the prosecutor attempted to withdraw them and, as such, his ruling was a "nullity as a matter of law." Id. at 3. Ultimately, MDJ Pappas granted the Commonwealth's request for a postponement, but advised the parties to bring the issue before the court of common pleas. Id. at 7.

On November 8, 2019, Appellant filed a motion to dismiss in the Court of Common Pleas of Allegheny County. Appellant's Motion to Dismiss, 11/8/19, at *1-13 (un-paginated). On November 12, 2019, the trial court held a hearing on the matter. During the hearing, Appellant argued that the re-filed charges must be dismissed because the Commonwealth failed to comply with Pa.R.Crim.P. 544. N.T. Hearing, 11/12/19, at 5-6. Appellant also claimed that the Commonwealth's failure prejudiced him because the charges, as re-filed, violated both the principles of compulsory joinder and his right to be secure against double jeopardy. Id. at 11-12. In response, the Commonwealth argued that it complied with Rule 544 and that jeopardy did not attach because MDJ Caulfield lacked jurisdiction to address Appellant's six summary offenses and the judgment of sentence, therefore, constituted a legal nullity. Id. at 11. The trial court ultimately denied Appellant's motion to dismiss.

- 4 -

Thereafter, Appellant filed a timely notice of appeal to this Court, invoking Pa.R.A.P. 313 and the collateral order doctrine as the basis for appellate jurisdiction.[6] On December 19, 2019, this Court issued an order directing Appellant to show cause why this appeal should not be quashed as interlocutory. Show Cause Order, 12/19/19, at 1. Appellant filed a timely[7] response to this Court's order on December 30, 2019, in which he asserted that he "satisfied all three prongs of the collateral order doctrine." Response to Show Cause Order, 12/30/19, at 12. By order filed on January 10, 2020, this Court discharged its show cause order and referred the matter to the panel assigned to decide the merits of this appeal. Order, 1/10/20, at 1.

Appellant raises the following issues on appeal:

I. Whether this Honorable Court has jurisdiction over the instant appeal pursuant to the collateral order doctrine?

II. Whether the re-filed charges against [Appellant] must be dismissed as a matter of law where the Commonwealth failed to meaningfully comply with Pa.R.Crim.P. 544[?]

III. Where the Commonwealth wishes to challenge the issuing authority's exercise of subject[] matter jurisdiction but failed to file a petition for writ of certiorari and/or notice of appeal, whether the re-filed charges against [Appellant] must be dismissed as a

_____

[6] Appellant and the trial court complied with Pa.R.A.P. 1925.

[7] Appellant was required to file a response within 10 days of this Court's show cause order dated December 19, 2019. Because December 29, 2019 was a Sunday, Appellant's response filed on December 30, 2019 is timely. See 1 Pa.C.S.A. § 1908 ("Whenever the last day of any [filing] period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

matter of law based on principles of double jeopardy and compulsory joinder?

Appellant's Brief at 5.

Before we address the merits of Appellant's claims, we must determine whether we possess appellate jurisdiction over the instant appeal. Appellant argues that jurisdiction is proper pursuant to the collateral order doctrine and Pa.R.A.P. 313. Appellant's Brief at 17-28. For the foregoing reasons, we agree.[8]

"[W]e note that with respect to criminal cases, appeals are generally taken from a final order or judgment of sentence. Despite the general rule, an appeal may be taken from a non[-]final order if the order is a collateral order, as codified at Pa.R.A.P. 313 (Collateral Orders)." Commonwealth v. Alston, 2020 WL 2703059, *2 (Pa. Super. May 26, 2020) (internal citations omitted). "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). Consistent with the definition that appears in our appellate rules, our Supreme Court has identified three elements that define a collateral order -

_____

[8] Procedurally, Appellant has been convicted of six summary offenses and a judgment of sentence directing the payment of fines has been imposed. Appellant, however, appealed from the trial court's order denying his motion to dismiss. Because the instant appeal was taken from the denial of Appellant's motion to dismiss, and not from his judgment of sentence, we must determine whether the collateral order doctrine confers jurisdiction over this appeal.

separability, importance, and irreparable loss if review is postponed. See Ben v. Schwartz, 729 A.2d 547, 550 (Pa. 1999). "Whether an order is appealable under the collateral order doctrine under Pa.R.A.P. 313 is a question of law, subject to a de novo standard of review, and the scope of review is plenary." Shearer v. Hafer, 177 A.3d 850, 855 (Pa. 2018).

"The first prong of the collateral-order doctrine requires that the appealed order is collateral to and separate from the main cause of action." Alston, 2020 WL 2703059 at *3. "An issue is separable if it can be examined without analysis of the claims presented in the underlying litigation." A.A. v. Glicken, 2020 WL 4726683, *3 (Pa. Super. Aug. 14, 2020) (internal citations omitted); Commonwealth v. Schultz, 133 A.3d 294, 308 (Pa. Super. 2016) ("In the instant case, the order is separable from the main action because it does not require a merits analysis of the underlying criminal allegations."). Herein, whether Appellant is guilty of the charged offenses is independent of his claim that the Commonwealth, in re-filing the charges, violated Pa.R.Crim.P 544, the rules concerning compulsory joinder, and the principles of double jeopardy. Thus, the "separability factor is easily met." Schultz, 133 A.3d at 309.

As to the second prong, this Court previously explained:

> To determine whether an issue is sufficiently important to support application of the collateral order doctrine, "[a court should] weigh the interests implicated in the case against the costs of piecemeal litigation." "[I]t is not sufficient that the issue be important to the particular parties. Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." "[A]n issue is important if the interests that would potentially go

unprotected without immediate appellate review [] are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule."

Glicken, 2020 WL 4726683 at *3 (internal citations and quotations omitted). Appellant argues that his claims implicate the constitutional right of due process, as well as double jeopardy and, as such, the issues involve rights too important to be denied review. "Moreover, we note that review of this order will apparently affect more than just the parties in this matter." Commonwealth v. Shearer, 882 A.2d 462, 470 (Pa. 2005). Thus, we conclude that the second prong is satisfied. See Commonwealth v. Brady, 508 A.2d 286, 288 (Pa. 1986) (holding that a non-frivolous appeal from the denial of a motion to dismiss on double jeopardy grounds involves a right deeply rooted in public policy because the denial potentially undermined the constitutional "right to be free from a second prosecution . . . for the same offense") (internal quotations and citations omitted); Alston, 2020 WL 2703059 at *3 (holding that the second prong of the collateral order doctrine was satisfied because the issue "involve[d] constitutional rights to compulsory process, due process, equal protection, and right to counsel").

Finally, the third prong requires us to examine whether Appellant's claim would be "irrevocably lost" if the case proceeded to final judgment. "[I]rreparable loss results from postponement if no effective means of review exist after the entry of final judgment." Glicken, 2020 WL 4726683 at *3. Appellant argues that "the sum and substance of [his] appeal will be irreparably lost if appellate review is postponed until [his] final judgment of

sentence" because the re-filed charges violate both the principles of compulsory joinder and his right to be secure against double jeopardy. Appellant's Brief at 27 (citation omitted). We agree and find that Appellant satisfied the third and final prong of the collateral order doctrine. See Commonwealth v. Bolden, A.2d 90, 93 (Pa. 1977) ("Once a defendant is erroneously subjected to another prosecution, neither an acquittal nor appellate reversal of a conviction is sufficient to vindicate his constitutional right not to be placed twice in jeopardy. We [therefore] conclude that the right to be free from multiple prosecution[s], embodied in the double jeopardy clause, can be adequately protected only by permitting an immediate appeal from a trial court's denial of relief.").

Having determined that this Court possesses appellate jurisdiction over the instant appeal, we now turn to the merits of Appellant's claims. Appellant's first issue argues that the Commonwealth "failed to meaningfully [] comply with Pa.R.Crim.P. 544" when it reinstituted the charges against him. Appellant's Brief at 29. Appellant therefore claims that the charges, as re-filed, must be dismissed.

Pennsylvania Rule of Criminal Procedure 544 states:

(A) When charges are dismissed or withdrawn at, or prior to, a preliminary hearing, or when a grand jury declines to indict and the complaint is dismissed, the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the re-filing of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges.

(B) Following the re-filing of a complaint pursuant to paragraph (A), if the attorney for the Commonwealth determines that the

preliminary hearing should be conducted by a different issuing authority, the attorney shall file a Rule 132 motion with the clerk of courts requesting that the president judge, or a judge designated by the president judge, assign a different issuing authority to conduct the preliminary hearing. The motion shall set forth the reasons for requesting a different issuing authority.

Pa.R.Crim.P. 544.

Notably, the relevant portion of the Comment to Rule 544 explains:

Pursuant to paragraph (A), in the usual case, charges will be reinstituted by filing a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges. However, there may be cases in which the attorney for the Commonwealth determines that a different issuing authority should conduct the preliminary hearing, such as when an error of law is made by the issuing authority in finding that the Commonwealth did not sustain its burden to establish a prima facie case. Paragraph (B) requires that, in these cases, the attorney for the Commonwealth must file a petition with the court of common pleas requesting that the president judge, or a judge designated by the president judge, assign a different issuing authority to conduct the preliminary hearing. For the procedure for requesting assignment of a different issuing authority, see Rule 132.

Pa.R.Crim.P. 544, Cmt.[9]  Lastly, the rules define "issuing authority" as "any

public official having the power and authority of a magistrate, a Philadelphia

_____

[9] As referenced in both Rule 544(B) and the Comment to Rule 544, Rule 132 provides for the temporary assignment of issuing authorities. It states, in relevant part:

(A) The president judge may assign temporarily the issuing authority of any magisterial district to serve another magisterial district whenever such assignment is needed:

* * *

arraignment court magistrate, or a magisterial district judge." Pa.R.Crim.P. 103.

Herein, Appellant claims that the term "issuing authority" "clearly means one, specific, individual [MDJ]." Appellant's Brief at 33. Accordingly, Appellant argues that, to reinstitute the charges against him, the Commonwealth was required to re-file the complaint with MDJ Caulfield, in accordance with Rule 544(A), or, alternatively, follow the procedure outlined in Rule 544(B), which permits the Commonwealth to seek a different issuing authority to preside over the preliminary hearing after the complaint has been

_____

> (3) to conduct a preliminary hearing pursuant to Rule 544(B).
>
> * * *
>
> (D) A motion shall be filed requesting a temporary assignment under paragraph (A)(3) whenever the attorney for the Commonwealth elects to proceed under Rule 544(B) following the refiling of a complaint.

Pa.R.Crim.P. 132(A)(3) and (D). The Comment to Rule 132 also states:

> Paragraphs (A)(3) and (D) govern those situations in which the attorney for the Commonwealth, after refiling the complaint following the withdrawal or dismissal of any criminal charges at, or prior to, a preliminary hearing, determines that the preliminary hearing should be conducted by a different issuing authority. See also Rule 544 (Reinstituting Charges Following Withdrawal or Dismissal). Under Rule 544, the president judge may designate another judge within the judicial district to handle reassignments.

Pa.R.Crim.P. 132, Cmt.

re-filed with the original issuing authority. Because the Commonwealth simply re-filed the complaint with MDJ Eichler, Appellant argues that it violated Rule 544 and, therefore, the re-filed charges must be dismissed.[10]

The Commonwealth, however, argues that the term "issuing authority" simply refers to the magisterial district, not an individual MDJ. Commonwealth's Brief at 11-15. Thus, the Commonwealth claims that the "issuing authority," in this instance, was the Pittsburgh Municipal Court. Id. As the Commonwealth did, in fact, re-file the complaint with the Pittsburgh Municipal Court, the Commonwealth contends that it complied with Rule 544 and the re-filed charges need not be dismissed.

This dispute centers upon the interpretation of the term "issuing authority" and the application of Pa.R.Crim.P. 544. "We begin by observing

_____

[10] By its terms, Rule 544(A) addresses situations that arise when the Commonwealth seeks to reinstitute charges against a defendant and the original charges have either been withdrawn or dismissed at or before a preliminary hearing. See Pa.R.Crim.P. 544(A). We recognize that in the instant case, not all of the original charges lodged against Appellant were dismissed or withdrawn at the preliminary hearing. On October 3, 2019, MDJ Caulfield dismissed the charge of fleeing or eluding but convicted Appellant of the six summary offenses after apparently disregarding the Commonwealth's request to withdraw the summary offenses. As such, we read Appellant's argument as asserting that the Commonwealth should have followed Rule 544 when it re-filed the criminal complaint against him because, during the preliminary hearing on October 3, 2019, it was the Commonwealth's express intent to withdraw the remaining summary offenses following MDJ Caulfield's dismissal of the fleeing or eluding charge. We conclude that Rule 544 should apply in such circumstances as the Comment to Rule 543 provides that where a prima facie case is not established and the Commonwealth does not ask the MDJ to adjudicate the summary charges, the complaint should be dismissed. See Pa.R.Crim.P. 543, Cmt.

that we apply the Statutory Construction Act, 1 Pa.C.S.[A.] §§ 1501-1991, when interpreting the Rules of Criminal Procedure." Commonwealth v. McClelland, 233 A.3d 717, 733 (Pa. 2020); see also Pa.R.Crim.P. 101(C) ("To the extent practicable, these rules shall be construed in consonance with the rules of statutory construction."). Since "statutory interpretation is a question of law, our standard of review is de novo[] and our scope of review is plenary." Commonwealth v. Hacker, 15 A.3d 333, 335 (Pa. 2011) (internal quotations and citations omitted). We note that:

> "The principal objective of statutory interpretation and construction is to ascertain and effectuate the intention of the [rule-making body]. 1 Pa.C.S.A. § 1921(a). ... The plain language of a statute [or rule] is the best indication of [this] intent. The basic tenet of statutory construction requires a court to construe words of the statute according to their plain meaning. 'When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.'" 1 Pa.C.S.A. § 1921(b).

Commonwealth v. Poncala, 915 A.2d 97, 104 (Pa. Super. 2006) (some internal quotations and citations omitted). "Furthermore, [] the Statutory Construction Act requires penal provisions of statutes to be strictly construed, 1 Pa.C.S.[A.] § 1928(b)(1); thus, where an ambiguity is found in the language of a penal statute, 'such language should be interpreted in the light most favorable to the accused[.]" Commonwealth v. Hall, 80 A.3d 1204, 1212 (Pa. 2013), quoting Commonwealth v. Huggins, 836 A.2d 862, 868 n.5 (Pa. 2003). Finally, courts "must give effect to every provision of the statute, as 'the legislature is presumed not to intend any statutory language to exist as

mere surplusage.'" Pocono Mountain Sch. Dist. V. Pennsylvania Dep't of Educ., 151 A.3d 129, 138 (Pa. 2016) ("Pocono") (citation omitted).

Upon review, we conclude that the plain language of Rule 544 and the definition set forth in Rule 103 support Appellant's position. Indeed, Rule 103 clearly defines "issuing authority" as a "public official" who has the "power and authority of a magistrate." Pa.R.Crim.P. 103. Rule 544(A) refers to the "issuing authority" that dismissed or permitted the withdrawal of charges. Specifically, Rule 544(A) requires the Commonwealth to "reinstitute the charges by approving, in writing, the re-filing of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges." Pa.R.Crim.P. 544(A). Rule 544(B), on the other hand, refers to the "issuing authority" who will conduct a preliminary hearing. In particular, Rule 544(B) applies in the event that the Commonwealth "determines that a different issuing authority should conduct the preliminary hearing," and then outlines the steps the Commonwealth must follow in order to "assign a different issuing authority to conduct the preliminary hearing." Pa.R.Crim.P. 544, Cmt. Taken together, the use of the term "issuing authority" in these provisions refer to an individual who takes the specific actions of dismissing charges, permitting withdrawal of charges, or conducting a preliminary hearing. Accordingly, when we look to the plain language of the rule and "give effect to every

provision of [it]," we conclude that the term "issuing authority" does, in fact, refer to a specific, individual MDJ. Pocono, 151 A.3d at 138 (Pa. 2016).[11]

Thus, in this instance, the Commonwealth violated both Rule 544(A) and (B) when it re-filed the complaint against Appellant. To comply with the plain language of Rule 544(A), the Commonwealth needed to re-file the complaint with MDJ Caulfield, the "public official" with the "power and authority of a magistrate" who originally dismissed the fleeing or eluding charge against Appellant. Pa.R.Crim.P. 130. The Commonwealth failed to do so and, instead, re-filed the complaint with MDJ Eichler. Furthermore, the Commonwealth failed to comply with Rule 544(B). Indeed, the Commonwealth did not re-file the complaint with MDJ Caulfield (the original issuing authority), nor did the Commonwealth file a petition with the court of common pleas and request that the president judge assign a different MDJ to preside over Appellant's preliminary hearing. Instead, the Commonwealth re-filed the charges with MDJ Eichler and MDJ Pappas conducted the October 17, 2019 preliminary hearing. Thus, the Commonwealth failed to conform to the requirements of Rule 544(A) and Rule 544(B) in this case.

The Commonwealth disputes an interpretation of Rule 544 that defines the term "issuing authority" as a single, specific MDJ, claiming that such a construction fails to take into consideration the structure of the Pittsburgh

_____

[11] A reading of Pa.R.Crim.P. 132 and the Comment to Rule 132 only bolsters this conclusion as it uses the term "issuing authority" and "judge" interchangeably. See Pa.R.Crim.P. 132(A) and (D); Pa.R.Crim.P. 132, Cmt.

Municipal Court and the venue requirements set forth in Pa.R.Crim.P. 130(A)

(explaining that "[a]ll Criminal Proceedings in summary and court cases shall

be brought before the issuing authority for the magisterial district in which the

offense is alleged to have occurred."). As the Commonwealth points out, the

Supreme Court of Pennsylvania created the Pittsburgh Municipal Court by

order dated November 29, 2004. The order states, in relevant part, as

follows:

> Pursuant to the authority set forth by Article V, Section 10(c) of the Constitution of Pennsylvania and the general supervisory and administrative authority of the Supreme Court of Pennsylvania as set forth by 42 Pa.C.S.[A.] Section 1701, et seq., (Judicial Code), it is directed that an administrative judicial unit hereinafter referred to as the Pittsburgh Municipal Court is established within the Fifth Judicial District, to which all matters within the jurisdiction of the Pittsburgh Magistrates Court are assigned, except those matters within the jurisdiction of Pittsburgh Housing Court pending further Order of this Court. Pursuant to 42 Pa.C.S.[A.] Section 325, (Judicial Code), the President Judge of the Fifth Judicial District shall assign, on a rotating basis, Allegheny County [MDJs] to hear all matters before the Pittsburgh Municipal Court and Pittsburgh Housing Court. The President Judge of the Fifth Judicial District shall exercise full administrative authority over the Pittsburgh Municipal Court and Pittsburgh Housing Court. The responsibilities and duties of the [MDJs] assigned to Pittsburgh Municipal Court and Pittsburgh Housing Court shall be the same as those of the minor judiciary and [MDJs] as provided by law. All fines, fees, costs, restitution, and other reparations collected by the Pittsburgh Municipal Court shall be distributed in accordance with 42 Pa.C.S.[A.] Sections 3571, 3572, 3573, and all other relevant legal authority.

34 Pa.B. 6507. The Commonwealth claims that, in light of the venue

restrictions imposed by Rule 130, as well as the fact that the Pittsburgh

Municipal Court does not have an elected MDJ, it complied with Rule 544 by

"re-fil[ing the complaint] with the Pittsburgh Municipal Court and . . . [waiting for] the [random] assignment of [an MDJ]."[12]  Commonwealth's Brief at 13. We disagree.

First, while the Commonwealth correctly asserts that MDJ Caulfield is not an elected MDJ for the Pittsburgh Municipal Court,[13] it fails to recognize that MDJ Caulfield served as the Pittsburgh Municipal Court's MDJ on a rotating basis presumably pursuant to a directive issued by the President Judge of the Fifth Judicial District.  As such, the Commonwealth could have re-filed the complaint with MDJ Caulfield in his capacity as the Pittsburgh Municipal Court's MDJ, regardless of his physical location.  Contrary to the Commonwealth's claims, this would not violate Rule 130.  Indeed, Rule 130 does not specifically mandate that the Commonwealth charge a defendant within the magisterial district that the offense took place.  Rather, it directs the Commonwealth to bring charges before an "issuing authority for the magisterial district in

_____

[12] The basis of the Commonwealth's argument that the term "issuing authority" is synonymous, and therefore interchangeable, with the term "magistrate district court" appears to emerge from the fact that the two terms are paired within the venue provision of Rule 130.  See Pa.R.Crim.P. 130(A) (explaining that "[a]ll Criminal Proceedings in summary and court cases shall be brought before the issuing authority for the magisterial district in which the offense is alleged to have occurred.").  In view of the plain language of Rule 544 and the definition set forth in Rule 103, which establish convincingly that the term "issuing authority" refers to an individual and not a judicial venue as we concluded above, we reject the construction of Rule 544 forwarded by the Commonwealth.

[13] We take judicial notice that MDJ Caulfield is the elected MDJ for Magisterial District 05-2-08 which is in the eastern suburbs of Pittsburgh.

which the offense is alleged to have occurred." Pa.R.Crim.P 130 (emphasis added). As stated above, MDJ Caulfield was one of the issuing authorities for the Pittsburgh Municipal Court and, as such, the Commonwealth could have re-filed the complaint with MDJ Caulfield in his capacity as a magistrate district judge sitting by designation on the Pittsburgh Municipal Court. Such a filing would meet the requirements of both Rule 544(A) and Rule 130.

Second, if we determined that the Commonwealth's actions conformed to the requirements of Rule 544(A), then the procedure delineated in Rule 544(B) would become surplusage. Rule 544(B) outlines the steps the Commonwealth must take if it seeks to have a different "issuing authority" conduct the preliminary hearing. See Pa.R.Crim.P. 544(B). If the Commonwealth could simply re-file the complaint with the Pittsburgh Municipal Court and secure, by random assignment, a different "issuing authority" for a subsequent preliminary hearing, then prosecutors who practice before the Pittsburgh Municipal Court could avoid Rule 544(B)'s mandate. In this case, the Commonwealth could easily have filed a petition requesting that the president judge for the Fifth Judicial District assign an "issuing authority" other than MDJ Caulfield to conduct Appellant's preliminary hearing. It failed to do so and, instead, unjustifiably attributed its failure to observe the requirements of Rule 544(A) and Rule 544(B) to the framework of the Pittsburgh Municipal Court. We are unpersuaded by this argument and,

therefore, conclude that the Commonwealth violated both Rule 544(A) and Rule 544(B) when it re-filed the criminal complaint against Appellant.[14]

As this Court previously explained, however, the Commonwealth's non-compliance with Rule 544, alone, "does not automatically entitle a defendant to relief." Commonwealth v. Pettersen, 49 A.3d 903, 911 (Pa. Super. 2012). Indeed, a defendant will be entitled to relief only if

> he challenges the re[-]filing of previously dismissed charges before the conclusion of the trial and when: 1) the re[-]filing of charges occurs after the expiration of the statute of limitations; or 2) when the re[-]filing of charges constitutes an effort to harass the defendant; or 3) where the re[-]filing of charges is prejudicial to the rights of the defendant.

Id. In this instance, Appellant claims that the Commonwealth's failure to conform to Rule 544 prejudiced him. Specifically, Appellant points out that, after MDJ Caulfield found him guilty of the six summary offenses on October 3, 2019, the Commonwealth failed to challenge the MDJ's exercise of jurisdiction over the six summary offenses. Instead, the Commonwealth simply re-filed the criminal complaint against Appellant without conforming to the requirements of Rule 544. In so doing, Appellant argues that the Commonwealth violated the principles of compulsory joinder and subjected

---

[14] We recognize that Rule 544, which was originally drafted in 1964, has not been amended to specifically address the unique structure of the Pittsburgh Municipal Court. Thus, compliance with Rule 544's requirements may be somewhat inconvenient. This Court, however, is bound to interpret and apply Rule 544 as written until our Supreme Court says otherwise.

him to double jeopardy. Appellant's Brief at 38-53. Upon review, we are constrained to disagree.

"The compulsory joinder statute is a legislative mandate that a subsequent prosecution for a violation of [a] statute that is different from a former prosecution, or is based on different facts, will be barred in certain circumstances." Commonwealth v. Fithian, 961 A.2d 66, 71 (Pa. 2008) (citation omitted). The statute, at Section 110 of the Pennsylvania Crimes Code, states, in relevant part, as follows.

> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances: The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:
>
> * * *
>
> any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense[.]"

18 Pa.C.S.A. § 110(1)(ii).

> As has been summarized by our [Supreme] Court, Section 110(1)(ii) . . . contains four requirements which, if met, preclude a subsequent prosecution due to a former prosecution for a different offense:
>
> (1) the former prosecution must have resulted in an acquittal or conviction; (2) the current prosecution is based upon the same criminal conduct or arose from the same

criminal episode as the former prosecution; (3) the prosecutor was aware of the instant charges before the commencement of the trial on the former charges; and (4) the current offense occurred within the same judicial district as the former prosecution.

Fithian, 961 A.2d at 72. "Each prong of this test must be met for compulsory joinder to apply." Id.

Similarly, "[u]nder the Double Jeopardy Clauses of the United States and Pennsylvania Constitutions, as well as under [Section 109 of the] Pennsylvania Crimes Code, a second prosecution for the same offense after [a conviction] is prohibited." Commonwealth v. Wilson, 227 A.3d 928, 936 (Pa. Super. 2020) (citation omitted). Indeed, Section 109, states, in relevant part:

When a prosecution is for a violation of the same provision of the statutes and is based upon the same facts as a former prosecution, it is barred by such former prosecution under the following circumstances: (3) [t]he former prosecution resulted in a conviction.

18 Pa.C.S.A. § 109(3).

As the plain text of Sections 109(3) and 110(1)(ii) make clear, a former prosecution bars a subsequent prosecution if, among other things, "the former prosecution . . . [results] in a . . . conviction." 18 Pa.C.S.A. § 109(3) and 110(1)(ii). Section 109 defines a conviction which is entitled to preclusive effect as follows.

There is a conviction if the prosecution resulted in a judgment of conviction which has not been reversed or vacated, a verdict of guilty which has not been set aside and which is capable of supporting a judgment, or a plea of guilty accepted by the

- 21 -

court. In the latter two cases failure to enter judgment must be for a reason other than a motion of the defendant.

18 Pa.C.S.A. § 109(3) (emphasis added). Section 112, in turn, describes instances when a guilty verdict is not capable of supporting a judgment for purposes of Section 109 and Section 110. Section 112 states, in relevant part:

A prosecution is not a bar within the meaning of [S]ection 109 of this title (relating to when prosecution barred by former prosecution for same the offense) through [S]ection 111 of this title (relating to when prosecution barred by former prosecution in another jurisdiction) under any of the following circumstances:

(1) The former prosecution was before a court which lacked jurisdiction over the defendant or the offense.

18 Pa.C.S.A. § 112(a).

In sum, Sections 109(3) and 110(1)(ii) bar a prosecution only where the former prosecution results in a "conviction." 18 Pa.C.S.A. §§ 109(3) and 110(1)(ii). Relevant to the instant appeal, a conviction within the meaning of Section 109(3) and Section 110(1)(ii) occurs only if there is "a verdict of guilt[] which has not been set aside and is capable of supporting a judgment." 18 Pa.C.S.A. § 109(3). Section 112(a) makes clear that a guilty verdict will not support a judgment where the court lacks jurisdiction over the defendant or the offense. 18 Pa.C.S.A. § 112(a).

Notably, in this case, it is virtually undisputed that MDJ Caulfield lacked jurisdiction under Pa.R.Crim.P. 542(F) and 543(F) to transform the October 3, 2019 preliminary hearing into a summary trial. In fact, one of Appellant's

overarching arguments is that, because the Commonwealth failed to challenge MDJ Caulfield's exercise of jurisdiction over the six summary offenses, Appellant's October 3, 2019 convictions remain in effect and Section 109(3) and 110(1)(ii) bar subsequent prosecution. Upon review, we conclude that because MDJ Caulfield lacked competent jurisdiction, his guilty verdicts cannot support a judgment. As such, Appellant cannot establish that the Commonwealth's failure to conform to Rule 544 prejudiced him.

Rule 542(F) of Pennsylvania's Rules of Criminal Procedure mandates that, in "any case in which a summary offense is joined with a misdemeanor, felony or murder charge, the issuing authority shall not proceed on the summary offense except as provided in Rule 543(F)." Pa.R.Crim.P. 542(F). The Comment to Rule 542 similarly states that "cases in which summary offenses are joined with misdemeanor, felony, or murder charges, pursuant to paragraph (F), during the preliminary hearing, the issuing authority is prohibited from proceeding on the summary offenses, or adjudicating or disposing of the summary offenses except as provided in Rule 543(F)." Pa.R.Crim.P. 542, Cmt.

Pa.R.Crim.P. 543(F) states:

(1) If the Commonwealth establishes a prima facie case pursuant to paragraph (B), the issuing authority shall not adjudicate or dispose of the summary offenses, but shall forward the summary offenses to the court of common pleas with the charges held for court.

(2) If the Commonwealth does not establish a prima facie case pursuant to paragraph (B), upon the request of the Commonwealth, the issuing authority shall dispose of the

summary offense as provided in Rule 454 (Trial In Summary Cases).

(3) If the Commonwealth withdraws all the misdemeanor, felony, and murder charges, the issuing authority shall dispose of the summary offense as provided in Rule 454 (Trial In Summary Cases).

Pa.R.Crim.P. 543(F)(1)-(3).

Lastly, the comment to Pa.R.Crim.P. 543 explains:

Rule 542(F) specifically prohibits an issuing authority at a preliminary hearing from proceeding on any summary offenses that are joined with misdemeanor, felony, or murder charges, except as provided in paragraph (F) of this rule. Paragraph (F) sets forth the procedures for the issuing authority to handle these summary offenses at the preliminary hearing. These procedures include the issuing authority (1) forwarding the summary offenses together with the misdemeanor, felony, or murder charges held for court to the court of common pleas, or (2) disposing of the summary offenses as provided in Rule 454 by accepting a guilty plea or conducting a trial whenever (a) the misdemeanor, felony, and murder charges are withdrawn, or (b) a prima facie case is not established at the preliminary hearing and the Commonwealth requests that the issuing authority proceed on the summary offenses.

Under paragraph (F)(2), in those cases in which the Commonwealth does not intend to refile the misdemeanor, felony, or murder charges, the Commonwealth may request that the issuing authority dispose of the summary offenses. In these cases, if all the parties are ready to proceed, the issuing authority should conduct the summary trial at that time. If the parties are not prepared to proceed with the summary trial, the issuing authority should grant a continuance and set the summary trial for a date and time certain.

In those cases in which a prima facie case is not established at the preliminary hearing, and the Commonwealth does not request that the issuing authority proceed on the summary offenses, the issuing authority should dismiss the complaint, and discharge the defendant unless there are outstanding detainers against the defendant that would prevent the defendant's release.

Pa.R.Crim.P. 543, Cmt. Thus, pursuant to both Rule 542(F) and Rule 543(F), the Commonwealth must request that the "issuing authority take jurisdiction before it may adjudicate the summary offenses." Commonwealth's Brief at 16.

In this case, the Commonwealth did not request MDJ Caulfield to adjudicate the six summary offenses leveled against Appellant. Instead, during the preliminary hearing on October 3, 2019, after MDJ Caulfield dismissed the charge of fleeing or eluding, the prosecutor for the Commonwealth stated: "That's fine, the fleeing can be dismissed. The summaries are withdrawn." N.T. Preliminary Hearing, 10/3/19, at 13. Without the Commonwealth's acquiescence, MDJ Caulfield lacked jurisdiction to transform the preliminary hearing into a summary trial and convict Appellant of the six summary offenses. Therefore, the guilty verdicts returned by MDJ Caulfield are not capable of supporting a judgment. Under these circumstances, Sections 109(3) and 110(1)(ii) do not bar the Commonwealth from re-filing the criminal complaint against Appellant. See 18 Pa.C.S.A. § 112(a). Rather, Appellant's convictions constitute a legal nullity and, as such, are unworthy of preclusive effect under the compulsory joinder rule and the principles of double jeopardy.

The case law of this Commonwealth supports this disposition. Indeed, in Commonwealth v. Oliver, 869 A2d 1167 (Pa. Commw. 2015), the Commonwealth charged the appellants with violating Sections 610(2), 610(3) and 610(6) of the Solid Waste Management Act, all of which were listed as

misdemeanors of the third degree. Id. at 1168. A preliminary hearing was held on February 11, 2004. Id. at 1169. "At the conclusion of the Commonwealth's case, [the a]ppellants questioned the propriety of the Commonwealth charging them with third-degree misdemeanors and requested that the [MDJ] 'take jurisdiction' of the charges against them as summary offenses." Id. The Commonwealth opposed the appellants' motion. Id. "After a brief recess," the MDJ adjudicated both appellants guilty of one summary offense under the Solid Waste Management Act and fined them. Id.

Thereafter, the "Commonwealth petitioned the trial court to issue a writ of certiorari to review the [MDJ's] verdicts against each of the [a]ppellants. Alternatively, the Commonwealth filed a notice of appeal from the [MDJ's] decision." Id. The trial court ultimately "issued the writs of certiorari," "vacated the [MDJ's] verdicts and, based upon its own review of the evidence offered at the preliminary hearing, found that the Commonwealth [] established its prima facie case" against the appellants and ordered them "held over for trial on the original misdemeanor charges." Id.

The appellants appealed to the Commonwealth Court and argued that "the Double Jeopardy Clauses of the United States and Pennsylvania Constitutions" prohibited the trial court from "retry[ing] them on misdemeanor violations after they were convicted by the [MDJ] of summary offenses containing identical elements." Id. at 1170. The Commonwealth Court disagreed. Instead, the Court concluded that the MDJ's adjudication of

the offenses was a "legal nullity" because the MDJ "lacked jurisdiction to transform the preliminary hearing into a summary trial." Id.

Specifically, the Commonwealth Court stated:

The basic principles of law with respect to the purpose of a preliminary hearing are well established. The preliminary hearing is not a trial. The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention[. ...] At this hearing the Commonwealth bears the burden of establishing at least a prima facie case that a crime has been committed and that the accused is probably the one who committed it[. ...] It is not necessary for the Commonwealth to establish at this stage the accused's guilt beyond a reasonable doubt[. ...] In order to meet its burden at the preliminary hearing, the Commonwealth is required to present evidence with regard to each of the material elements of the charge and to establish sufficient probable cause to warrant the belief that the accused committed the offense. Commonwealth v. McBride, 595 A.2d 589, 591 (Pa. 1991) (citations omitted). Further, pursuant to Rule 543 of the Rules of Criminal Procedure, "[i]f the Commonwealth establishes a prima facie case of the defendant's guilt, the issuing authority shall hold the defendant for court. Otherwise, the defendant shall be discharged." Pa. R.Crim. P. 543(A).

Thus, in view of the foregoing principles, we agree with the Commonwealth that the [MDJ] in this case had only two options at the close of the preliminary hearing: either hold [a]ppellants for trial if the Commonwealth established a prima facie case or discharge [a]ppellants if the Commonwealth failed to sustain its burden. The "third" option chosen by the [MDJ], to usurp the Commonwealth's prosecutorial discretion under the Act and sua sponte conduct a summary trial, simply has no foundation in the Judicial Code or the Rules of Criminal Procedure. The convictions rendered by the [MDJ] were a legal nullity[ and, as such, jeopardy never attached].

Id. at 1171; see also id. at n.10.

Oliver's holding was followed by this Court in Commonwealth v. Noss, 162 A.3d 503 (Pa. Super. 2017). In Noss, the appellant was charged

with various crimes, including aggravated assault, resisting arrest, simple assault and harassment. Id. at 506. The Assistant District Attorney ("ADA"), as well as two affiants, signed the complaint approving the charges. Id. Thereafter, the appellant's preliminary hearing was postponed on two separate occasions. Id. Finally, on September 2, 2015, the day set for the appellant's preliminary hearing, defense counsel informed the MDJ that "there was an agreement to allow [the a]ppellant to plead guilty to [d]isorderly conduct . . . and to sentence [him] to time served." Id. At that time, the ADA was not present, and the "parties did not address whether the District Attorney's Office authorized the guilty plea to a 'reduced charge.'" Id. Despite the ADA's absence, the MDJ accepted the agreement. Id. Thereafter, the appellant pled guilty to disorderly conduct and the MDJ sentenced him to time served. Id. Subsequently, the ADA arrived at the scheduled time for the preliminary hearing and, after learning that "the matter was complete," filed a petition for writ of certiorari, or in the alternative, a notice of appeal. Id. The trial court ultimately granted the Commonwealth's writ, vacated the appellant's guilty plea, and reinstated all charges. Id.

Thereafter, the appellant appealed to this Court and argued, inter alia, that the trial court "abused its discretion by vacating [his] guilty plea and sentence before the Magisterial District Court and by reinstating charges withdrawn by the Commonwealth, in violation of the Double Jeopardy Clauses of the Unite[d] States and Pennsylvania Constitutions." Id. at 506. A panel of this Court disagreed, and instead, reached the following conclusion:

> In a case in which a court lacks subject matter jurisdiction to adjudicate criminal charges, no jeopardy attaches and there is no bar to a second prosecution. [Commonwealth v. Keenan, 530 A.2d 90, 93–94 (Pa. Super. 1987); see United States v. Tateo, 377 U.S. 463 (1964) (the Fifth Amendment does not preclude retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction); see also [Oliver, supra at 1170] (determining that proceedings before the MDJ were a legal nullity because the MDJ had lacked jurisdiction, and thus, jeopardy never attached).
>
> In the instant case, the MDJ lacked jurisdiction to accept [a]ppellant's guilty plea, so the plea was a legal nullity and jeopardy did not attach. Accordingly, we find that the trial court did not violate the double jeopardy clauses of the United States and Pennsylvania Constitutions.

Id. at 509 (parallel citations omitted). Thus, pursuant to both Oliver and Noss, if an MDJ lacks jurisdiction, an adjudication of pending charges constitutes a legal nullity and, as such, the doctrines of double jeopardy and compulsory joinder will not bar a second prosecution.

The question remains, however, whether the Commonwealth must subsequently challenge an MDJ's unlawful adjudication. In his final appellate issue, Appellant herein claims that the Commonwealth must file a petition for writ of certiorari and/or notice of appeal to challenge an MDJ issuance of a legally void judgment of sentence. Appellant's Brief at 41-53. If, as in this case, the Commonwealth does not challenge an MDJ exercise of jurisdiction and, instead, simply re-files the charges, Appellant argues that the charges, as re-filed, violate the principles of double jeopardy and compulsory joinder and must be dismissed. Id.

We agree with Appellant that the Commonwealth may not, on its own accord, nullify a final decision of an MDJ. We also agree that the Commonwealth could have, and should have, challenged MDJ Caulfield's October 3, 2019 adjudication of the six summary offenses. We do not, however, agree that the Commonwealth violated the principles of double jeopardy and compulsory joinder by re-filing the charges against Appellant. As stated above, MDJ Caulfield lacked jurisdiction under Rule 542(F) and 543(F) to convict Appellant of the six summary offenses and, as such, Appellant's convictions are incapable of supporting a judgment. Oliver and Noss directly support this conclusion. Thus, even if the Commonwealth followed proper procedure, we would reach the same conclusion, to-wit that MDJ Caulfield's adjudication constituted a legal nullity and jeopardy did not attach. The mere fact that the Commonwealth re-filed charges instead of filing a petition for writ of certiorari or a notice of appeal does not change the fact that a jurisdictionally infirm judgment of sentence lacks preclusive effect. Accordingly, Appellant is not entitled to dismissal of the new charges, despite the Commonwealth's many failures.

We therefore conclude that, while the Commonwealth violated Rule 544 when it re-filed the complaint against Appellant, Appellant is not entitled to relief. MDJ Caulfield lacked jurisdiction under Rule 542(F) and Rule 543(F) to adjudicate the six summary offenses. As such, the October 3, 2019 summary adjudication was a legal nullity and Appellant's judgment of sentence is void ab initio. For this same reason, the re-filing of the criminal complaint against

Appellant without first challenging MDJ Caulfield's adjudication did not violate the principles of double jeopardy or compulsory joinder. While we do not condone the Commonwealth's actions, we are constrained to affirm the trial court's order denying Appellant's motion to dismiss. On remand, we direct the trial court to vacate Appellant's October 3, 2019 judgment of sentence as void ab initio.

Order affirmed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2020