2022 PA Super 10

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOEL MARTINEZ SANTIAGO | : | |
| | : | |
| Appellant | : | No. 1523 MDA 2020 |

Appeal from the Order Entered November 9, 2020
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0001068-2020

BEFORE:  BOWES, J., OLSON, J., and KING, J.

OPINION BY BOWES, J.:                    **FILED: JANUARY 20, 2022**

Joel Martinez Santiago appeals from the November 9, 2020 order denying his motion to dismiss two counts of aggravated assault graded as first-degree felonies, one count of resisting arrest graded as a second-degree misdemeanor, two counts of simple assault and one count of disorderly conduct graded as third-degree misdemeanors, and one summary count of retail theft on grounds related to double jeopardy and compulsory joinder. After careful review, we affirm.

On the evening of December 27, 2019, Appellant was arrested by Officer Arnulfo Rivera and another member of the Pittston Township Police Department after he allegedly stole a pack of cigarettes from a gas station and physically assaulted the responding officers when confronted.  Appellant was first charged with the above-noted charges on December 28, 2019.  ***See*** N.T. Hearing, 9/10/20, at 2-5.  On January 28, 2020, Appellant appeared

before Magisterial District Judge Alexandra Kokura Kravitz ("MDJ Kravitz") for a preliminary hearing. Appellant was represented by the Luzerne County Public Defender's Office. No attorney for the Commonwealth participated in the hearing, although Officer Rivera was present. During the proceedings, Officer Rivera negotiated a plea agreement with Appellant in the above-captioned case. Specifically, Officer Rivera purported to withdraw all the above-noted charges except for the summary charge of retail theft and add two summary counts of disorderly conduct. Appellant immediately entered a guilty plea to these reconstituted charges and was sentenced.[1] This withdrawal of the initial charges and addition of the new charges was not reduced to, or evidenced by, any writing that appears in the certified record.

On March 12, 2020, the Commonwealth re-filed the original charges against Appellant with MDJ Kravitz by submitting a written criminal complaint that was approved by an assistant district attorney. *See* Criminal Complaint, 3/12/20, at 1. MDJ Kravitz held the charges and the case was transferred to the Court of Common Pleas of Luzerne County ("trial court"). In the trial court, Appellant filed a motion to dismiss the re-filed charges, raising several grounds for relief, including: (1) lack of compulsory joinder pursuant to 18 Pa.C.S. § 110(a)(1); (2) violation of the double jeopardy clauses of the United

---

[1] Although the record indicates that Appellant received some manner of sentence in connection with his guilty plea, there is no documentation or averments describing his sentence with specificity. Indeed, there is no documentation in the certified record concerning these initial proceedings before MDJ Kravitz aside from a handful of docket sheets that were attached as exhibits to Appellant's March 12, 2020 motion to dismiss.

States and Pennsylvania Constitutions; and (3) the Commonwealth's alleged failure to timely appeal Appellant's guilty plea before MDJ Kravitz. *See* Motion to Dismiss, 6/16/20, at ¶¶ 1-67. The trial court denied Appellant's motion to dismiss and advised Appellant that his motion was "not frivolous" and, thus, the order was collateral and immediately appealable. *See* Order, 11/6/20, at 1 (citing Pa.R.Crim.P. 587(B)(6)). On December 1, 2020, Appellant filed a timely notice of appeal to this Court. Both Appellant and the trial court have complied with their respective obligations under Pa.R.A.P. 1925.

Appellant has raised the following issues for our consideration:

A. Did the trial court err or abuse its discretion in failing to dismiss all charges where the re-filing of the same charges, based upon the same set of facts and circumstances upon which [Appellant] had earlier pled guilty [to] before a magisterial district judge, violates the Double Jeopardy Clause[s] of the United States and Pennsylvania Constitutions, U.S. CONST., Amend. V & XIV; PA. CONST.[,] Art. 1, § 10 and 18 Pa.C.S. §[§] 109 & 110(1)(ii)?

1. Did the trial court err or abuse its discretion in concluding that the Commonwealth was the only entity which could authorize the withdrawal of felony and/or misdemeanor charges and substitute those offense[s] with summary offenses, before a magisterial district judge, to which [Appellant] pled, where an officer acted as a "designee" of the Commonwealth?

2. Did the trial court err or abuse its discretion in concluding that the magisterial district judge did not possess subject matter jurisdiction to allow charges to be withdraw[n] and, then, accept a plea to a summary offense?

3. Did the trial court err or abuse its discretion in concluding that it was proper for the Commonwealth to re-file charges upon the same set of facts and circumstances and was not required to either appeal to the Superior Court or petition for writ of *certiorari* to the trial court from the magisterial

- 3 -

district judge where a valid guilty plea and sentence had been entered?

4. Was [Appellant] deprived of his right to avoid being placed twice in jeopardy and the protections afforded by the principles of compulsory joinder?

Appellant's brief at 4 (cleaned up).

As an initial matter, we note that this Court has held that an interlocutory appeal filed from the denial of a motion to dismiss on compulsory joinder and double jeopardy grounds following the re-filing of claims by the Commonwealth satisfies the collateral order doctrine pursuant to Pa.R.A.P. 313(b) ("A collateral order is . . . separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment . . . , the claim will be irreparably lost.").[2] *See Commonwealth v. Davis*, 242 A.3d 923, 928-29 (Pa.Super. 2020). Thus, we have jurisdiction to consider Appellant's claims for relief and will address each *seriatim*.

---

[2] While the content of the trial court's order clearly evinces that it considers Appellant's motion to dismiss non-frivolous, its findings of fact do not contain a specific discussion of frivolousness as required by Pa.R.Crim.P. 587(B)(4) ("In a case in which the judge denies the motion [to dismiss on double jeopardy grounds], the findings of fact shall include a specific finding as to frivolousness."). *See* Trial Court Opinion, 11/9/20, at 1-7. It is well-established that, "[a]bsent a finding that Appellant's claim was frivolous, the trial court's order [denying a motion to dismiss on double jeopardy grounds is] immediately appealable as a collateral order." *Commonwealth v. Gross*, 232 A.3d 819, 833-34 (Pa.Super. 2020) (*en banc*). Moreover, the trial court's omission of this discussion does not negatively impact our jurisdiction. *Id*. at 833 n.1 ("Whether the trial court followed or deviated from Rule 587 does not deprive this Court of appellate jurisdiction[.]").

J-A22006-21

The instant dispute centers upon issues of statutory interpretation pursuant to the Pennsylvania Rules of Criminal Procedure, which present a pure question of law and, thus, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Rushing**, 99 A.3d 416, 420 (Pa. 2014). The following legal principles will guide our review:

> We begin by observing that we apply the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991, when interpreting the Rules of Criminal Procedure. . . .
>
> [T]he principal objective of statutory interpretation and construction is to ascertain and effectuate the intention of the rule-making body. 1 Pa.C.S. § 1921(a). The plain language of a statute or rule is the best indication of this intent. The basic tenet of statutory construction requires a court to construe words of the statute according to their plain meaning. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Furthermore, the Statutory Construction Act requires penal provisions of statutes to be strictly construed, 1 Pa.C.S. § 1928(b)(1); thus, where an ambiguity is found in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. Finally, courts must give effect to every provision of the statute, as the legislature is presumed not to intend any statutory language to exist as mere surplusage.

**Davis**, **supra** at 931 (cleaned up).

Appellant's first claim for relief concerns the authority of Officer Rivera to effectuate the withdrawal and replacement of the criminal charges initially filed against Appellant. **See** Appellant's brief at 13 ("Officer Rivera was authorized to withdraw felony and misdemeanor charges and, then, charge [Appellant] with summary charges without obtaining the approval of the District Attorney's [o]ffice."). This particular issue squarely implicates

- 5 -

Pennsylvania Rule of Criminal Procedure 551, which provides that "[i]n any court case pending before an issuing authority, the attorney for the Commonwealth, or his or her designee, may withdraw one or more of the charges." Pa.R.Crim.P. 551. Appellant argues that Officer Rivera was the Commonwealth's "designee" pursuant to Rule 551 and, therefore, was acting under color of its authority when he *sua sponte* negotiated and implemented the plea agreement described above. We disagree.

Our Supreme Court has previously discussed the significant remit of district attorneys in determining the charges brought against a defendant:

> It is well established that district attorneys, in their investigative and prosecutorial roles, have broad discretion over whether charges should be brought in any given case. A district attorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case[.]

> The district attorney's power to prosecute cannot be restricted by the actions of municipal police officers who might, in any given case, deem it worthless or ill-advised to prosecute. While the police exercise, as a practical matter, a certain discretion in deciding whether to make an arrest, issue a citation, or seek a warrant, the ultimate discretion to file criminal charges lies in the district attorney. Police officers have no authority to enter agreements limiting the power of the district attorney in this regard.

> [A]ffording police officers authority to enter agreements that prevent the district attorney from carrying out his duties would present a clear infringement of powers which the constitution and the legislature, as well as our case law, have reposed in the district attorney. Not only would it shift power from an elected and publicly accountable official to appointed public servants, but it would create havoc in the administration of justice by creating

unbridled and decentralized decisions about which cases will be prosecuted.

***Commonwealth v. Stipetich***, 652 A.2d 1294, 1295 (Pa. 1995).

While Pennsylvania law is largely silent on the procedure necessary to appoint a police officer as the Commonwealth's designee under Rule 551, this Court has previously held that a police officer does not become a designee simply by virtue of his mere presence at a proceeding. ***See Commonwealth v. Noss***, 162 A.3d 503, 508 (Pa.Super. 2017) ("Appellant offers no rule, regulation, statute, case, or evidence to support the position that a police officer is automatically a designee of an attorney for the Commonwealth pursuant to [Rule] 551."). While there does not appear to be a bright-line rule regarding Rule 551 designation, ***Noss*** indicates that **some** documentation or corroboration is required to establish the existence of such a delegation of authority by the Commonwealth to a peace officer.[3] ***Id***. Thus, we find no merit to Appellant's threshold position that a police officer can become a Rule 551 designee *sub silentio*.[4] ***See*** Appellant's brief at 17.

---

[3] Appellant's position also suffers greatly from the lack of documentation in the certified record respecting the initial charges and the preliminary hearing. The relevant transcripts and filings are simply not of record. Under our jurisprudence, it is well-established that "'[i]t is an appellant's duty to ensure that the certified record is complete for purposes of review.'" ***Commonwealth v. Rosado***, 150 A.3d 425, 432 (Pa. 2016) (quoting ***Commonwealth v. Reed***, 971 A.2d 1216, 1219 (Pa. 2009)).

[4] An attorney for the Commonwealth "may" participate in a preliminary hearing but is not required to appear. ***See*** Pa.R.Crim.P. 542(A). Under circumstances "[w]hen no attorney appears on behalf of the Commonwealth at a preliminary hearing, the affiant may be permitted to ask questions of any

*(Footnote Continued Next Page)*

Even assuming, *arguendo*, that Officer Rivera **was** a designee of the Commonwealth under Rule 551, Appellant's argument concerning the validity of the at-issue withdrawal of charges suffers from a separate fundamental deficiency: no writing documenting the withdrawal appears in the certified record as required by Rule 551. **See** Pa.R.Crim.P. 551 ("**The withdrawal shall be in writing.**" (emphasis added). The application of this requirement appears to be an issue of first impression, as our review of case law has uncovered no on-point adjudications. Nonetheless, the absence of a writing is equally fatal to Appellant's position that the withdrawal of charges by Officer Rivera was valid. Since the withdrawal of charges was never reduced to writing, it is violative of Rule 551. Based on the foregoing discussion, we readily conclude that the withdrawal of charges by Officer Rivera was unsuccessful and legally insufficient.

This holding is also dispositive with respect to Appellant's second claim, wherein he asserts that MDJ Kravitz had jurisdiction to transform Appellant's preliminary hearing into an *ad hoc* guilty plea proceeding. **See** Appellant's brief at 24 ("Here, the magisterial district judge, because Officer Rivera was a 'designee' of the Commonwealth, possessed subject matter jurisdiction to accept and approve the withdrawal of the felony and misdemeanor charges,

_____

witness who testifies." Pa.R.Crim.P. 542(B). This limited permission to question is separate from the explicit designation required by Rule 551, as the language of Rule 542 indicates that an affiant may ask questions of "any witnesses" as a matter of course where no Commonwealth attorney appears. No such generalized authorization appears in Rule 551. **Accord Commonwealth v. Noss**, 162 A.3d 503, 508 (Pa.Super. 2017).

the amendment of the charges to summary offenses and, then, a plea agreement and guilty plea."). In the absence of a valid withdrawal, the initial charges against Appellant remained in force at the time of the preliminary hearing conducted by MDJ Kravtiz, which included felonies, misdemeanors, and a summary offense charge.[5]

As a general matter, magisterial district judges have jurisdiction over summary offenses that do not involve the delinquency of a minor. **See** 42 Pa.C.S. § 1515(a)(1). However, that authority is circumscribed in the specific context of a preliminary hearing by Pennsylvania Rule of Criminal Procedure 542(F), which provides that "[i]n any case in which a summary offense is joined with a misdemeanor, felony, or murder charge, the issuing authority[6] shall **not** proceed on the summary offense except as provided in Rule 543(F)." Pa.R.Crim.P. 542(F) (emphasis added). Pennsylvania Rule of Criminal Procedure 543(F) provides as follows:

> (F) In any case in which a summary offense is joined with misdemeanor, felony, or murder charges:

---

[5] Appellant argues that "no summary offenses were included within the complaint" initially filed against him. Appellant's brief at 26. The record belies this claim, as the notes of testimony indicate Appellant was initially charged with a summary count of retail theft. **See** N.T. Hearing, 9/10/20, at 5.

[6] This Court has held that the term "issuing authority" refers to "an individual who takes the specific actions of dismissing charges, permitting withdrawal of charges, or conducting a preliminary hearing." **See Commonwealth v. Davis**, 242 A.3d 923, 932 (Pa.Super. 2020). In the specific context of this case, it refers to MDJ Kravitz. **Id**. (holding that the term "issuing authority" refers to "a specific, individual MDJ").

(1) If the Commonwealth establishes a *prima facie* case pursuant to paragraph (B), the issuing authority shall not adjudicate or dispose of the summary offenses, but shall forward the summary offenses to the court of common pleas with the charges held for court.

(2) If the Commonwealth does not establish a *prima facie* case pursuant to paragraph (B), upon the request of the Commonwealth, the issuing authority shall dispose of the summary offense as provided in Rule 454 (Trial In Summary Cases).

(3) If the Commonwealth withdraws all the misdemeanor, felony, and murder charges, the issuing authority shall dispose of the summary offense as provided in Rule 454 (Trial In Summary Cases).

Pa.R.Crim.P. 543(F).

Thus, Rules 542 and 543 only provide authority for a magisterial district judge to adjudicate summary offenses in circumstances where all other ancillary misdemeanor and felony charges are withdrawn or dismissed for want of a *prima facie* case. Otherwise, the case should be forwarded to the court of common pleas. This Court has previously found that Rules 542 and 543 have jurisdictional dimension and concluded that actions taken by magisterial district judges in violation thereof should be considered a "legal nullity." **See Davis**, **supra** at 936-37 (holding that MDJ lacked jurisdiction to issue convictions for summary offenses due to a failure to comply with the requirements of Pa.R.Crim.P. 542(F) and 543(F)).

This Court's holding in **Davis** offers significant guidance on this issue. In that case, the MDJ overseeing Davis's preliminary hearing transformed the proceeding into a summary trial and, *sua sponte*, found Davis guilty of various

summary offenses filed by the Commonwealth. Reviewing the language of Rules 542(F) and 543(F), this Court concluded that the MDJ in **Davis** lacked jurisdiction to take these actions because there was no "request" from the Commonwealth for it to exercise jurisdiction over the summary charges. **Id**. at 937 ("[P]ursuant to both Rule 542(F) and Rule 543(F), the Commonwealth must request that the issuing authority take jurisdiction before it may adjudicate the summary offenses."). Thus, this Court concluded that, "[w]ithout the Commonwealth's acquiescence, [the MDJ] lacked jurisdiction to transform the preliminary hearing into a summary trial and convict [Davis] of the six summary offenses. Therefore, the guilty verdicts by [the MDJ were] not capable of supporting a judgment" but were a "legal nullity." **Id**.

Turning to the instant case, the lack of a valid withdrawal of charges by the Commonwealth has the same jurisdictional effect pursuant to Rules 542(F) and 543(F). Namely, MDJ Kravitz was not permitted to proceed on the substituted summary charges because the original felony and second-degree misdemeanor then-pending against Appellant were never legitimately withdrawn.[7] **See** Pa.R.Crim.P. 542(F), 543(F)(3). Accordingly, MDJ Kravitz only had jurisdiction to render a determination as to whether the

---

[7] We note that MDJ Kravitz **may** have been empowered to exercise jurisdiction over the third-degree misdemeanors filed against Appellant in this case. **See** 42 Pa.C.S. § 1515(a)(6.1). However, it is unclear the extent to which this statute overrides the language of Rules 542(F) and 543(F), which would appear to apply to all misdemeanors joined with summary offenses regardless of grading. Since the original charges pending against Appellant at his preliminary hearing also included second-degree misdemeanors and first-degree felonies, we need not render a determination on this point.

Commonwealth had established a *prima facie* case. **See** Pa.R.Crim.P. 542(F), 543(F)(1)-(2). Instead, MDJ Kravitz converted the preliminary hearing into a guilty plea hearing and rendered a determination regarding the summary charges brought by Officer Rivera without proper authorization or documentation. Accordingly, MDJ Kravitz lacked jurisdiction to accept Appellant's guilty plea, which renders the resulting judgment of sentence a "legal nullity" that was *void ab initio*. **See Davis**, **supra** at 937, 940; **Noss**, **supra** at 509 (holding that a guilty plea accepted by an MDJ lacking jurisdiction was a "nullity"); **see also** Pa.R.Crim.P. 550(A) (providing that a defendant may only plead guilty "[i]n a court case in which [an MDJ] is specifically empowered by statute to exercise judgment"). Therefore, Appellant's second issue is without merit.[8]

In his third claim for relief, Appellant asserts that the Commonwealth erred and waived any objection to the jurisdiction of MDJ Kravitz by failing to file a petition for a writ of *certiorari* or a notice of appeal following the acceptance of Appellant's guilty plea. **See** Appellant's brief at 28-30. Rather, the Commonwealth re-flied the original charges against Appellant under the procedure provided by Pa.R.Crim.P. 544 ("Reinstituting Charges Following

---

[8] Our conclusion that MDJ Kravitz lacked jurisdiction in this case differs from the rationale offered by the trial court. **See** Trial Court Opinion, 11/9/20, at 5-6. However, it is well-settled that "where the result is correct, an appellate court may affirm a lower court's decision on any ground without regard to the ground relied upon by the lower court itself." **Commonwealth v. Singletary**, 803 A.2d 769, 772-73 (Pa.Super. 2002).

Withdrawal or Dismissal").[9]  From the outset of our analysis, we note that issues concerning subject matter jurisdiction are not subject to waiver.  ***See Commonwealth v. Pammer***, 232 A.3d 931, 937 (Pa.Super. 2020) ("It is axiomatic that any issue going to the subject matter jurisdiction of a court or administrative tribunal to act in a particular matter is an issue that parties cannot waive by agreement or stipulation, estoppel, or waiver.").

***Davis*** also addressed the argument advanced by Appellant on this point.  ***Davis***, ***supra*** at 939 ("The question remains . . . whether the Commonwealth must subsequently challenge an MDJ's unlawful adjudication. [Davis] herein claims that the Commonwealth must file a petition for [a] writ of *certiorari* and/or notice of appeal to challenge an MDJ issuance of a legally void judgment of sentence.").  Ultimately, this Court concluded that while the Commonwealth "could" have and "should" have directly challenged the

_____

[9]  The Commonwealth complied with the procedural requirements of Rule 544 in re-filing these charges.  ***See*** Pa.R.Crim.P. 544(A) ("When charges are dismissed or withdrawn at, or prior to, a preliminary hearing, . . ., the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the re-filing of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges.").  Specifically, the assistant district attorney assigned to this case approved the re-filing of the erroneously withdrawn criminal charges by filing a written complaint with MDJ Kravitz. ***See*** Criminal Complaint, 3/12/20, at 1.  Moreover, this Court has held that "the Commonwealth's non-compliance with Rule 544, alone, 'does not automatically entitle a defendant to relief.'"  ***Davis***, ***supra*** at 934 (quoting ***Commonwealth v. Pettersen***, 49 A.3d 903, 911 (Pa.Super. 2012)).  Rather, Appellant would have to demonstrate that he suffered prejudice as a result of a violation of Rule 544.  ***Id***.  Appellant has not advanced any such argument.

erroneous judgment of sentence entered by the MDJ in **Davis**, its failure to do so was not fatal to its refiling of charges under Rule 544:

> As stated above, [the MDJ] lacked jurisdiction under Rule 542(F) and 543(F) to convict [Davis] . . . and, as such, [his] convictions are incapable of supporting a judgment. . . . Thus, even if the Commonwealth followed proper procedure, we would reach the same conclusion, to-wit that [the MDJ's] adjudication constituted a legal nullity . . . . The mere fact that the Commonwealth re-filed charges instead of filing a petition for writ of *certiorari* or a notice of appeal does not change the fact that a jurisdictionally infirm judgment of sentence lacks preclusive effect. Accordingly, [Davis] is not entitled to dismissal of the new charges, despite the Commonwealth's many failures.

*Id*. at 939-40. Thus, while the Commonwealth could have filed a petition for a writ of *certiorari* or a notice of appeal, its decision to re-file charges instead is valid due to MDJ Kravitz's lack of jurisdiction. Appellant's third issue fails.

In his fourth claim, Appellant argues that the Commonwealth's re-filing of the withdrawn charges violated the constitutional protections extended by the double jeopardy clauses of the United States and Pennsylvania Constitutions, **see** U.S. CONST., Amend. V & XIV; PA. CONST., Art. 1, § 10, as well as the doctrine of compulsory joinder set forth at 18 Pa.C.S. §§ 109, 110.[10] **See** Appellant's brief at 30-34.

_____

[10] There is conflict in the precedent of this Court concerning whether the double jeopardy clause of the Pennsylvania Constitution provides greater protections than its federal analogue. **Compare Noss**, **supra** at 509 ("We employ a unitary analysis of the state and federal double jeopardy clauses since the protections afforded by each constitution are identical.") **with Commonwealth v. Kearns**, 70 A.3d 881, 884 (Pa.Super. 2013) ("Our Supreme Court has determined that the double jeopardy clauses of Pennsylvania's constitution provides greater protection than its federal
*(Footnote Continued Next Page)*

We need not engage in a lengthy discussion of these constitutional and statutory provisions. This Court has already rejected this same line of argument, as follows: "[I]f an MDJ lacks jurisdiction, an adjudication of pending charges constitutes a legal nullity and, as such, the doctrines of double jeopardy and compulsory joinder will not bar a second prosecution." **Davis**, **supra** at 939. As noted in the discussion above, the MDJ in this case lacked jurisdiction to convert Appellant's preliminary hearing into a guilty plea proceeding. Moreover, this Court has held that "the re-filing of the criminal complaint against [a defendant] without first challenging [the MDJ's erroneous adjudication] did not violate the principles of double jeopardy or compulsory joinder." **Id**. at 940. Thus, Appellant's fourth issue lacks merit.

Based upon the foregoing analysis, we will affirm the order denying Appellant's motion to dismiss. On remand, we direct the trial court to vacate Appellant's January 28, 2020 judgment of sentence as void *ab initio*.

Order affirmed. Case remanded with instructions. Jurisdiction relinquished.

---

counterpart[.]"). Critically, Appellant has not sought to distinguish the protections offered by either document in his arguments. Thus, we need not address this apparently split authority.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>01/20/2022</u>