J-S13040-22

2022 PA Super 79

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN ALAN CARL | : | No. 1486 MDA 2021 |

Appeal from the Dispositional Order Entered October 25, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003918-2020

BEFORE:   STABILE, J., KING, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED:  MAY 4, 2022**

The Commonwealth appeals the Order entered in the Court of Common Pleas of York County granting a defense motion to dismiss the criminal complaint against Appellee, Jonathan Alan Carl, pursuant to Pa.R.Crim.P. 600.

The Commonwealth maintains the trial court erred by including within the Rule 600(C) computation of time a 60-day period that fell under a York County judicial emergency declaration.  In response to the pandemic, statewide rules pertaining to criminal defendants' rule-based rights to a prompt trial were suspended.  After careful review, we vacate the order dismissing this matter and remand for further proceedings.

The relevant procedural history, which is not in dispute, is aptly summarized in the trial court's Pa.R.A.P. 1925(a) opinion, as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

On June 29, 2020, Carl was charged with Simple Assault (M3), 18 Pa.C.S. § 2701(a)(3), and [summary] Harassment, 18 Pa.C.S. § 2709(a)(1). [His] preliminary hearing was scheduled for and held on August 6, 2020.

[On September 16, 2020,] Carl filed a waiver of arraignment, [which had been scheduled for September 20, 2020], and he was scheduled for a plea date on November 20, 2020. On November 20, 2020, Carl indicated through counsel that his case was ready for trial for the next available trial date of January 4, 2021.

Later in November [of 2020], jury trials were suspended in York County by emergency order from November 30, 2020, to February 28, 2021, in response to the COVID-19 pandemic [].

Carl's case was not called for trial until the Call of the List on October 21, 2021, for the trial week beginning October 25, 2021. On October 25, 2021, defense counsel filed a Motion to Dismiss pursuant to Pa.R.Crim.P. 600. A hearing on the motion was held on October 25, 2021.

As of October 25, 2021, 485 days had passed since the filing of the criminal complaint.

. . .

The evidence presented indicates that Carl indicated on November 20, 2020, that his case would be ready for trial as of January 4, 2021. At the time the request was made, jury trials were scheduled for the month of December 2020, and therefore the time from November 20, 2020, through January 3, 2021, was forty-six (46) days of excludable time, which Carl concedes.

We do note, however, that as a result of the judicial emergency order that was entered on November 24, 2020, and the subsequent extensions that followed, no jury trials occurred in York County from November 30, 2020, through February 28, 2021, which [adds] excusable time [as calculated, *infra*], as the delay could not be attributed to either the Commonwealth or Defendant.

. . .

The mechanical run date in the present case was June 28, 2021. If the [trial court] attributes the full delay from November 20, 2020, to January 4, 2021, against Carl, then the adjusted run date was August 13, 2021.

Accounting for excusable delay from January 5, 2021 through February 28, 2021, an additional fifty-five (55) days, the case should have been called for trial by October 7, 2021.

[As Carl's case was not called for trial until the Call of the List on October 21, 2021, for the week of October 25, 2021, defense counsel filed a Motion to Dismiss pursuant to [Rule] 600.

Trial Court Opinion, 12/23/21, at 2-5, 8.

At the Rule 600 hearing, the Commonwealth sought to exclude from the Rule 600 computation of time the period from June 29, 2020, to August 31, 2020, during which the York County Court of Common Pleas was operating under a Covid-related judicial emergency declaration issued by Joseph C. Adams., President Judge of the 19th Judicial District. The May 27, 2020, "Declaration of Judicial Emergency" provided, in relevant part:

## DECLARATION

Per the Supreme Court's Order dated May 27, 2020, authorizing President Judges to declare judicial emergencies in their judicial districts, I declare a judicial emergency in the 19th Judicial District through August 31, 2020. During the emergency, the following shall apply:

. . .

(3) Suspend statewide rules pertaining to the rule-based right of criminal defendants to a prompt trial.

Any postponement caused by the judicial emergency shall be considered a court postponement and shall constitute excludable

time for purposes of the application of Rule 600. *See Commonwealth v. Bradford*, 46 A.3d 693 (Pa. 2012) and *Commonwealth v. Mills*, 162 A.3d 323 (Pa. 2017).

Declaration of Judicial Emergency, 5/28/20.

At the Rule 600 hearing of October 25, 2021, both the defense and the Commonwealth agreed that the declared emergency created no delay in this matter, as Carl's case proceeded from the filing of his criminal complaint to his arraignment, and then to his plea date, without interruption.

It was the Commonwealth's position, however, that the plain language of the Declaration called for the suspension of rule-based prompt trial time computations until the expiration of the declared judicial emergency and that it had relied on such language in scheduling the instant case for trial in compliance with Rule 600. Thus, it maintained that the 60 days from the June 29, 2020, filing of the criminal complaint in this case to the August 31, 2020, expiration of the declared emergency must be deemed excludable time. N.T., 10/25/21, at 6.

The trial court disagreed, ruling that the Declaration had no bearing on the instant case where it caused neither delay nor a postponement of any of its proceedings. Thus, the court refused to extend Carl's adjusted run date by the requested 60 days and proceeded to conduct its examination of the Commonwealth's due diligence in bringing the present case to trial.

Critical to the trial court's due diligence inquiry was its observation that no discernable backlog of pending criminal trials had occurred in York County during the relevant time here, and it produced a list of 15 criminal cases with

less Rule 600 urgency that the Commonwealth had elected to bring to trial before the present case. It concluded, therefore, that the Commonwealth had not demonstrated appropriate time management here.

Accordingly, having determined that Carl's adjusted run date had passed without a trial and the Commonwealth had failed to prove by a preponderance of the evidence that it acted with due diligence throughout the proceedings to bring the case to trial in compliance with Rule 600, the trial court granted Carl's motion to dismiss his criminal complaint with prejudice. This timely appeal followed.

The Commonwealth presents the following issue for our consideration:

> [Did] the trial court err[] in granting Defendant's motion to dismiss pursuant to Pa.R.Crim.P. 600? Specifically, [did] the trial court err[] in not including in its excludable delay calculations the time period from June 29, 2020 through August 31, 2020, wherein there was a local order signed by then-President Judge Adams suspending the statewide rules pertaining to the rule-based right of criminal defendants to a prompt trial[, and in] factoring in this time, the Commonwealth was within its adjusted mechanical date for Rule 600 . . . ?

Commonwealth's Brief of Appellant, at 5.

When presented with a speedy trial claim arising under Pennsylvania Rule of Criminal Procedure 600, our standard of review is well settled.

> In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly

unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

**Commonwealth v. Bethea**, 185 A.3d 364, 370 (Pa. Super. 2018) (citation and emphases omitted), *appeal denied*, 219 A.3d 597 (Pa. 2019). The Commonwealth bears the burden of proving, by a preponderance of evidence, that it acted with due diligence throughout the proceedings. **See Commonwealth v. Kearse**, 890 A.2d 388, 393 (Pa. Super. 2005).

Pennsylvania Rule of Criminal Procedure 600 provides that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed."

Pa.R.Crim.P. 600(A)(2)(a). In computing the Rule 600 deadline, however, we do not necessarily count all time following the filing of the complaint. Rather, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

> The Rule 600 analysis thus entails three steps:
>
> First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.
>
> If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600([D]). As we have explained, Rule 600[ ] encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600[ ] extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

***Commonwealth v. Wendel***, 165 A.3d 952, 956–57 (Pa. Super. 2017) (citation omitted).

In the instant case, the Commonwealth urges this Court to conclude that the plain language of the Judicial Emergency Declaration's Subsection (3) mandated the suspension of time computations taken under statewide rules governing a criminal defendant's rights to a prompt trial. As discussed, the

- 7 -

trial court rejected this position, refused to count the implicated 60 days as excludable time and extend Carl's adjusted run date accordingly, and commenced its due diligence inquiry. Guided by well-settled rules of statutory interpretation, we find the court's ruling in this regard to have been in error.

As the present dispute centers on the proper interpretation of the criminal procedures set forth in the Judicial Emergency Declaration at issue, we take guidance from our standards and scope of review governing statutory construction of the Pennsylvania Rules of Criminal Procedure. Issues of statutory construction involving the Pennsylvania Rules of Criminal Procedure present a pure question of law and, thus, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Rushing***, 99 A.3d 416, 420 (Pa. 2014).

> We begin by observing that we apply the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991, when interpreting the Rules of Criminal Procedure. ...
>
> [T]he principal objective of statutory interpretation and construction is to ascertain and effectuate the intention of the rule-making body. 1 Pa.C.S. § 1921(a). The plain language of a statute or rule is the best indication of this intent. The basic tenet of statutory construction requires a court to construe words of the statute according to their plain meaning. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Furthermore, the Statutory Construction Act requires penal provisions of statutes to be strictly construed, 1 Pa.C.S. § 1928(b)(1); thus, where an ambiguity is found in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. Finally, courts must give effect to every provision of the statute, as the legislature is presumed not to intend any statutory language to exist as mere surplusage.

***Commonwealth v. Santiago***, 270 A.3d 512, 516 (Pa. Super. 2022).

As reproduced, *supra*, Subsection (3) of President Judge Adams' May 27, 2021, Declaration of Judicial Emergency for the 19th Judicial District provides, in relevant part, that "[d]uring the emergency, the following shall apply: . . . (3) Suspend statewide rules pertaining to the rule-based right of criminal defendants to a prompt trial."

Construing Subsection (3) in accordance with the plain meaning of its words, we find that it clearly and simply directs that rule-based, "prompt trial" time computations are suspended for the duration of the judicial emergency at hand. The intended effect on Rule 600 computations in criminal cases existing at that time is thus evident: such computations are to be held in abeyance and shall not include days transpiring during the effective time of the Declaration until the expiration of the declared emergency, at which time resumption or commencement of such computations may proceed.

As for the separate and final paragraph of the Declaration, we do not agree with Mr. Carl's position that it limits Subsection (3)'s suspension of prompt trial rules to only those instances where postponements occurred. Rather, the final paragraph states, "Any postponement caused by the judicial emergency shall be considered a court postponement and shall constitute excludable time for purposes of the application of Rule 600."

Reading the Declaration as a whole leads to the conclusion that the final paragraph serves as a supplement to Subsection (3) that extends the Rule 600 exception therein to postponements "caused by" the judicial emergency,

which would thus include even those consequential postponements occurring after the expiration of the emergency.

Given the uncertainties of the covid pandemic's course, it was reasonable to anticipate that the judicial emergency would have downstream effects, such as the possible creation of a protracted criminal case backlog. Upon the eventual expiration of the declared emergency, however, Subsection (3)'s time computation suspension would expire with it.

The prospective posture of the Declaration's final paragraph, however, addresses this potential void by providing an ongoing, explicit, local policy in those cases that continue to experience postponements stemming from the judicial emergency even after the emergency state, itself, has been lifted.

The final paragraph, therefore, functions as a judicial response to the anticipated need for fair time computation and case management demands in the wake of any emergency-caused postponement, occurring either during or after the emergency. It does not, however, in any discernable way limit the immediate, preemptive, and plain mandate in Subsection (3) to suspend statewide rules pertaining to the rights of criminal defendants to a prompt trial "during the emergency."

As such, we find that the 60-day time period in question should have been excluded from the Rule 600 time computation in Mr. Carl's case. The proper consequence of this exclusion would have been the extension of his adjusted run date to December 6, 2021, and thus would have obviated the

need for an inquiry into the Commonwealth's due diligence in bringing him to trial in compliance with Rule 600(C).

It was error for the trial court to reach the due diligence inquiry where the adjusted run date had not yet lapsed. Indeed, for the trial court to conclude that due diligence required the Commonwealth to take upon itself the task of adding back time to Mr. Carl's time computation that the Judicial Emergency Declaration so plainly excluded by virtue of Subsection (3) was error.

As outlined above, our relevant jurisprudence counsels against Rule 600 dismissals absent dilatory or bad faith prosecutorial efforts in bringing defendants to trial in a timely fashion. Here, we find the Commonwealth acted both reasonably and in good faith in relying upon Subsection (3) of the Declaration of Judicial Emergency to exclude from its internal Rule 600 timekeeping the 60 days from the time the criminal complaint was filed to the date of the Declaration's expiration.

The plainly-worded Subsection (3) unambiguously suspended in criminal cases all rule-based, "prompt trial" time computations for the duration of the Declaration's effective period, and nothing in the subsequent paragraph of the Declaration placed qualifications or limitations on this absolute, temporary suspension. Accordingly, we vacate the order to dismiss and remand for further proceedings consistent with this decision.

Order vacated. Remanded for further proceedings. Jurisdiction relinquished.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/04/2022