J-S44024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEROY WILSON | : | |
| | : | |
| Appellant | : | No. 160 EDA 2023 |

Appeal from the PCRA Order Entered December 9, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007374-2015

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 26, 2024**

Appellant Leroy Wilson appeals *pro se* from the order denying his timely first Post Conviction Relief Act (PCRA) petition.[1]  On appeal, Appellant raises ineffectiveness claims against trial counsel, direct appeal counsel, and PCRA counsel.  We affirm.

A previous panel of this Court set forth the following factual history:

[Appellant] served as a handyman to various residents, including the victim, eighty-five-year-old Regina Brunner Holmes, living on or around the 300 block of Roumfort Road in Philadelphia.  On June 27, 2015, [Appellant] was in the neighborhood, gardening and moving furniture for one of the victim's neighbors.  While he was working, he approached another neighbor, Darlene Adams, and inquired about a car of hers that she had listed for sale.  [Appellant] told Ms. Adams that he believed the car was worth $2,500 and Ms. Adams agreed to sell the car to [Appellant] in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

exchange for $1,500 and [Appellant's] services. [Appellant] told Ms. Adams that he would pay her the following week, after he collected his pay from the victim and another neighbor for services he had performed on their homes.

Two days later, on June 29, 2015, Adam Brunner, the victim's son, received a phone call from his mother's employer, the Chestnut Hill Local, where she worked as a typist and editor. Mr. Brunner was told that his mother had not shown up for work, which was highly unusual because she had never been late. Mr. Brunner went to his mother's home, at 307 Roumfort Road, but was unable to get into the home or get into contact with his mother, so he called the police.

After arriving at the scene and gaining entry into the victim's home, police located the victim lying on her bedroom floor, with multiple lacerations and strangulation marks on her body. In addition, police observed a large amount of blood on her bed and bedroom wall, and multiple emptied purses on the bed and floor. The victim was pronounced dead at the scene. An autopsy revealed that the victim died during the early morning hours of June 28, 2015, from a combination of multiple stab wounds, strangulation, and blunt trauma to her head.

During the course of their investigation, Philadelphia Police Detectives discovered that the victim's ATM card was used three times at a Wells Fargo Bank on Broad Street at approximately 3:30 A.M. on June 28th, the same morning that the victim was killed. Detectives also discovered that one of the victim's credit cards was used to make a large online purchase at Toys R Us. The I.P. address from where the purchase was made was traced to 3137 North Stillman Street in Philadelphia, the home of Micshell Hoskins, [Appellant's] ex-girlfriend, and where [Appellant] periodically resided.

On the morning of the murder, at approximately 3:00 A.M., [Appellant] arrived at Ms. Hoskins's home and knocked on the front door for Hoskins to let him in. Soon after arriving, [Appellant] left, only to come back a short time later. After Hoskins once again let him into her home, [Appellant] told her that he had "caught a body." A few hours later, [Appellant] gave Hoskins a laptop that belonged to the victim and told Hoskins to buy whatever she wanted from Toys R Us.

On June 30, 2015, the victim's car, a 2007 Toyota Corolla, was found near Hoskins's home on the 3100 block of North Stillman

Street. Video surveillance recovered from the morning of the murder showed the car travelling onto North Stillman Street at 3:01 A.M. and leaving North Stillman at 3:22 A.M. At 3:28 A.M., video surveillance captured the car entering the parking lot of the Wells Fargo Bank on Broad Street, where the victim's ATM card was used only minutes later. Video surveillance also captured the individual using the victim's card at the ATM machine, although his face was not visible. However, Micshell Hoskins identified the individual depicted in the video surveillance as [Appellant] by his walk, the manner in which he wore his pants, and because he was wearing the same sweatshirt that [Appellant] had been wearing the day before the murder. Jessica Gaymon, [Appellant's] girlfriend at the time of the murder, also identified [Appellant] as the individual using the victim's card at the ATM machine from his clothes, his build, and the manner in which he pulled up his pants.

*Commonwealth v. Wilson*, 3250 EDA 2017, 2019 WL 2369585 at *1-2 (Pa. Super. filed June 5, 2019) (unpublished mem.) (citation omitted).

The PCRA court set forth the following procedural history:

On May 5, 2017, following a jury trial . . . [Appellant] was convicted of one count each of murder [in] the first degree, robbery, burglary, and possessing an instrument of crime (PIC).[2] The [trial court] immediately imposed the mandatory sentence of life in prison [without parole] for the murder charge,[3] with two consecutive terms of 10 to 20 years' imprisonment for robbery and burglary, and a consecutive term of 2½ to 5 years' imprisonment for [PIC], for an aggregate sentence of life plus 22½ to 45 years in prison.

[Appellant] filed post-sentence motions, which the [trial court] denied on August 31, 2017. On June 5, 2019, the Superior Court affirmed [Appellant's] judgment of sentence and on January 2, 2020, the Supreme Court of Pennsylvania denied *allocatur*. [**See Commonwealth v. Wilson**, 3250 EDA 2017, 2019 WL 2369585 (Pa. Super. filed June 5, 2019) (unpublished mem.), *appeal denied*, 222 A.3d 1125 (Pa. 2020).] [Appellant] was represented

---

[2] 18 Pa.C.S. §§ 2502(a), 3701(a)(1)(i), 3502(a)(1), and 907(a), respectively.

[3] 18 Pa.C.S. § 1102(a)(1).

- 3 -

at trial and through direct appeal by Earl Kauffman, Esquire [(trial counsel)].

On November 13, 2020, [Appellant] filed a *pro se* petition under the PCRA. Dennis Turner, Esquire [(Attorney Turner)], entered his appearance as appointed counsel on January 11, 2021. [Attorney] Turner took no action on [Appellant's] PCRA petition and repeatedly requested continuances until April 8, 2022, at which time he filed a motion for discovery. That day, the [PCRA court] relieved [Attorney] Turner as counsel and ordered [Appellant] be appointed new counsel. On April 14, 2022, Gina Amoriello, Esquire [(prior PCRA counsel)], entered her appearance as appointed counsel for [Appellant]. On September 18, 2022, pursuant to [**Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and] **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988 [(*en banc*), prior PCRA counsel] filed a letter stating there was no merit to [Appellant's] claims for collateral relief and requested to withdraw as counsel. On October 20, 2022, the [PCRA court] issued notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss [Appellant's] PCRA petition without an evidentiary hearing. On December 9, 2022, the [PCRA court] dismissed [Appellant's] PCRA petition and granted [prior PCRA counsel's] motion to withdraw.

[Appellant] filed a *pro se* notice of appeal on January 4, 2023. The [PCRA court] issued an order pursuant to Pa.R.A.P. 1925(b) directing [Appellant] to file a concise statement of errors complained of on appeal by January 27, 2023. On January 23, 2023, [Appellant] filed an "application for extension of time in which to file Appellant's Rule 1925(b) statement of errors complained of on appeal following receipt of complete record," in which he requested documents from the record of his case as well as a twenty-one day extension from receipt of the requested documents to file a concise statement of errors complained of on appeal. At a status conference on January 31, 2023, the [PCRA court] directed prior PCRA counsel, [] to provide necessary documents to [Appellant] as soon as possible. That same day, the [PCRA court] issued an order granting [Appellant] until March 2, 2023, to file his concise statement of errors complained of on appeal. On February 17, 2023, [Appellant] filed a "motion to amend the appellate record," in which he requested certain exhibits from his trial be entered into the certified record for his appeal. The [PCRA court] held a status conference regarding [Appellant's] motion to amend the appellate record on February 24, 2023, at which time the [PCRA court] directed the

- 4 -

> Commonwealth to send [Appellant] a redacted copy of his requested trial exhibits. On March 1, 2023, the [PCRA court] received [Appellant's Rule 1925(b) statement].

PCRA Ct. Op., 3/16/23, at 1-3 (citations omitted and some formatting altered).

Appellant raises the following issues for our review:

1. Did Appellant suffer from ineffective assistance of [prior] PCRA counsel when [prior PCRA counsel] failed to locate and plead three issues of merit?

   A. Should [prior] PCRA counsel be found to have provided ineffective assistance of counsel for failing to locate and plead direct appeal counsel's ineffectiveness for waiving an issue regarding photo number 43 being shown to the jury?

   B. Should [prior] PCRA counsel be found to have provided ineffective assistance of counsel for failing to plead an error on the part of trial counsel regarding permitting the viewing of photos numbered 403-413 to the jury without objection?

   C. Did [prior] PCRA counsel provide ineffective assistance [of] counsel in failing to locate and plead trial counsel's failure to address prosecutorial misconduct committed by the Commonwealth during [its] closing statements to the jury?

Appellant's Brief at 3A (formatting altered).

In all three of his issues, Appellant raises layered claims of ineffectiveness against prior PCRA counsel, direct appeal counsel, and trial counsel.[4]

---

[4] Our Supreme Court has adopted a rule permitting PCRA petitioners to "raise claims of ineffective [assistance of] PCRA counsel at the first opportunity, even if on appeal." **Commonwealth v. Bradley**, 261 A.3d 381, 405 (Pa. 2021).

*(Footnote Continued Next Page)*

In reviewing the denial of a PCRA petition, our standard of review

is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

\* \* \*

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

---

Instantly, we note that in its Rule 1925(a) opinion, the PCRA court concluded that Appellant failed to raise his layered claims of ineffective assistance of PCRA counsel in Appellant's response to the PCRA court's Rule 907 notice of intent to dismiss, therefore, Appellant has waived his issues on appeal. ***See*** PCRA Ct. Op. at 5-7. This Court has held that ***Bradley*** permits us to review an allegation of PCRA counsel's ineffectiveness, even if it is raised for the first time on appeal, rather than in a response to a Rule 907 notice. ***See Commonwealth v. Taylor***, 1654 MDA 2022, 2023 WL 5202414 at *3 (Pa. Super. filed Aug. 14, 2023) (unpublished mem.); ***see also*** Pa.R.A.P. 126(b) (stating that unpublished memoranda filed after May 1, 2019 may be cited for persuasive value). Accordingly, we decline to find waiver and shall review Appellant's issues on their merits.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted and formatting altered). Additionally, "[c]ounsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Davis*, 262 A.3d 589, 596 (Pa. Super. 2021) (citation omitted).

"Where a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation." *Commonwealth v. Parrish*, 273 A.3d 989, 1004 n.11 (Pa. 2022) (citation omitted).

Specifically, our Supreme Court has explained:

To be eligible for relief on [layered claims of ineffective assistance of counsel, a petitioner] must plead and prove that: (1) trial counsel was ineffective for a certain action or failure to act; and (2) [subsequent] counsel was ineffective for failing to raise [previous] counsel's ineffectiveness. As to each relevant layer of representation, [a petitioner] must meet all three prongs of the *Pierce*[5] test for ineffectiveness. A failure to satisfy any of the three prongs of the *Pierce* test requires rejection of a claim of ineffective assistance of trial counsel, which, in turn, requires rejection of a layered claim of ineffective assistance of [subsequent] counsel.

Thus, if the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of [subsequent] counsel ineffectiveness of necessity must fail, and it is not necessary for the court to address the other two prongs of the *Pierce* test [*i.e.*, the reasonable basis and prejudice prongs] as applied to [subsequent] counsel.

_____

[5] *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987); *see also Sandusky*, 203 A.3d at 1043 (same).

***Commonwealth v. Chmiel***, 30 A.3d 1111, 1128 (Pa. 2011) (citations omitted and formatting altered).

In his first two issues, Appellant claims that prior PCRA counsel was ineffective for failing to raise ineffectiveness claims against trial counsel and direct appeal counsel in connection with photographs that were admitted into evidence and published to the jury. Appellant's Brief at 6-11.

Specifically, Appellant contends that trial counsel was ineffective for failing to object to other crime scene photographs being published to the jury. *Id.* at 9. In support, Appellant argues that what he identifies as "Photograph No. 43", which depicted the victim's entire head and neck, "inflamed the jury, because of its gruesome nature, causing prejudice which should have excluded [its] use as [outweighing] any probative value." *Id.* at 7.[6] Appellant further argues that trial counsel was ineffective for failing to object to the admission of photographs numbered 403-416, which were from the victim's autopsy. Specifically, Appellant alleges that the photographs at issue were a "gruesome depiction of the face and body of the victim." *Id.* at 9. Appellant concludes that the photographs' "evidentiary value did not outweigh their prejudicial effect." *Id.* at 10.

Our Supreme Court has addressed the admissibility of crime scene and autopsy photographs in a murder case as follows:

---

[6] On direct appeal, this Court found the issue waived, as the photograph at issue was never made part of the certified record. ***Wilson***, 2019 WL 2369585 at *2.

- 8 -

The admissibility of photographs of a murder victim, like the admissibility of other evidence, is a matter resting within the sound discretion of the trial court. In determining the admissibility of such photographs, the trial court must engage in the following analysis:

First a [trial] court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

Photographic images of a homicide victim are often relevant to the intent element of first-degree murder. The mere fact that a medical examiner testified to the nature of the victim's injuries and the cause of death does not render photographs of the victim duplicative. *Commonwealth v. Rush*, 646 A.2d 557, 560 (Pa. 1994) ("[T]he condition of the victim's body provides evidence of the assailant's intent, and, even where the body's condition can be described through testimony from a medical examiner, such testimony does not obviate the admissibility of photographs."). While recognizing that photographs of a homicide victim can be unpleasant, disturbing, and brutal, we have held that there is no need to so overextend an attempt to sanitize the evidence of the condition of the body as to deprive the Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt.

*Commonwealth v. Watkins*, 108 A.3d 692, 724 (Pa. 2014) (some citations omitted and some formatting altered).

In the instant case, the PCRA court compared crime scene photograph 43 and a photograph from the victim's autopsy, and reached the following conclusion:

Crime scene photograph 43 was one of two photographs that depicted the victim's entire head and neck. The other was an autopsy photograph, which was marked as autopsy photograph A-A. Both showed the extensive injuries inflicted on the victim

including multiple stab wounds, strangulation marks, and gashes. Because there were no witnesses to the murder here at issue, these extensive injuries were essential and irreplaceable evidence of [Appellant's] intent to kill the victim. Comparing the two photographs, the [trial court] found that the crime scene photograph was less likely to disturb the jurors because it was not a close-up photograph of the injuries, [the victim's] eyes were closed, and much of the detail was obscured by blood. Accordingly, the [trial court] excluded the autopsy photograph, but admitted the crime scene photograph. Although the [trial court] did not believe the crime scene photograph to be inflammatory, even if it had been, it had essential evidentiary value that clearly outweighed any likelihood of inflaming the minds and passions of the jurors. Accordingly, it was properly admitted.

\* \* \*

Photographs 403-416 are autopsy photos that show the multitude of injuries the victim sustained, including injuries to her hands, arms, neck, back, and head. . . . [The trial court] found none of these photographs to be inflammatory or "so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant." . . . [A]ll of the photographs had essential evidentiary value to establish defendant's intent to kill, which outweighed any potential for unfair prejudice. . . . Therefore, trial counsel could not have been ineffective for failing to object to their admission, and PCRA counsel could not been ineffective for failing to raise a claim based on these photographs.

PCRA Ct. Op. at 9-11 (citations omitted).

The record further reflects that the trial court instructed the jury as follows regarding the evidentiary value of the photographs that were published during trial:

Ladies and gentlemen, you folks saw photographs in this case that showed the body of the decedent at the crime scene and you also saw several autopsy photographs. These photographs were admitted into evidence for the purpose of showing the nature of the wounds received by the deceased; for showing the conditions at the scene of the alleged crime; and for helping you folks understand the testimony of the medical examiner. These, of

- 10 -

course, were not pleasant photographs to look at. You folks should not let them stir up your emotions to the prejudice of [Appellant]. Your verdict must be based on a rational and fair consideration of all of the evidence and not on passion or prejudice against [Appellant], against the Commonwealth or against anybody else connected with this case.

N.T. Trial, 5/5/17, at 108-09. Indeed, the PCRA court found that the photographs at issue had essential evidentiary value which outweighed any potential unfair prejudice to Appellant. *See* PCRA Ct. Op. at 10-11.

We first turn to crime scene photograph 43. Preliminarily, we note that the Commonwealth, on March 28, 2023, filed a motion with this Court to correct the record pursuant to Pa.R.A.P. 1926 to include, *inter alia*, "crime scene photograph 43, depicting the victim's head and neck" be included in the certified record under seal. *See generally* Commonwealth's Mot. to Correct Record, 3/28/23. On April 13, 2023, this Court entered an order denying the Commonwealth's motion as moot, as the sealed exhibits at issue were transmitted to this Court on March 29, 2023. The PCRA court's March 28, 2023 order transmitting the sealed exhibits at issue to this Court also directed the Commonwealth to "provide copies of the exhibits to the prison superintendent, so that [Appellant] may view them, on request, as necessary to litigate his appeal." PCRA Ct. Order, 3/28/23, at 1. The record reflects that Appellant was served a copy this order via first class mail.

The supplemental record included Commonwealth's Exhibit 43, which is labeled as "24. View of kitchen." Commonwealth's Exhibit 43. The photograph does not contain any images of the victim. *See id***.** The

Prothonotary of this Court initiated a request to the Court of Common Pleas of Philadelphia County to acquire the additional photographs that were admitted into evidence at trial. However, crime scene photograph 43 was not included in the photographs sent to this Court's Prothonotary in response to its request.

We emphasize that in order to facilitate meaningful appellate review, it is Appellant's duty to provide this Court with a complete record. **Commonwealth v. Santiago**, 270 A.3d 512, 517 n.3 (Pa. Super. 2022), *appeal denied*, 282 A.3d 1124 (Pa. 2022). It is not the role of this Court to scour the record for support for Appellant's claims. **Commonwealth v. Cannovo**, 199 A.3d 1282, 1289 (Pa. Super. 2018). Without crime scene photograph 43, we are constrained to find that Appellant's ineffectiveness claim relating to its admissibility is waived on appeal. **See Commonwealth v. Holston**, 211 A.3d 1264, 1276-77 (Pa. Super. 2019) (*en banc*).

Based on our review of the record, we agree with the remainder of PCRA court's conclusions, as they relate to the autopsy photographs. **See Sandusky**, 203 A.3d at 1043-44; **see also** PCRA Ct. Op. at 10-11. On this record, Appellant has failed to demonstrate that his underlying claim has any arguable merit. As noted, the photographs at issue had evidentiary value that outweighed the likelihood of inflaming the minds and passions of the jurors in the instant case. **See Watkins**, 108 A.3d 724. Further, the trial court instructed the jury to consider the photographs "for the purpose of showing the nature of the wounds received by the deceased; for showing the conditions

- 12 -

at the scene of the alleged crime; and for helping [the jury] understand the testimony of the medical examiner." *See* N.T. Trial, 5/5/17, at 108-09; *see also Commonwealth v. Goods*, 265 A.3d 662, 672 (Pa. Super. 2021) (holding that a jury is presumed to follow a trial court's instructions). Accordingly, Appellant has failed to establish that trial counsel or direct appeal counsel were ineffective. *See Parrish*, 273 A.3d at 1004 n.11; *Chmiel*, 30 A.3d at 1128; *see also Davis*, 262 A.3d at 596 (stating that counsel cannot be considered ineffective for failing to pursue a meritless claim).

In his remaining issue, Appellant contends that prior PCRA counsel was ineffective for failing to raise a claim relating to alleged prosecutorial misconduct during the Commonwealth's closing arguments to the jury. Appellant's Brief at 11. Appellant contends that the Commonwealth improperly incorporated opinion and inflamed the jury with its rhetoric and references to the crime scene and autopsy photographs admitted at trial during closing arguments. *Id.* at 12-14.

When addressing claims of prosecutorial misconduct in the context of closing arguments, this Court has explained:

> [W]ith specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to

- 13 -

prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.

*Commonwealth v. Jones*, 191 A.3d 830, 835-36 (Pa. Super. 2018) (citation omitted).

Here, the PCRA court addressed Appellant's claim as follows:

During her closing argument, the prosecutor made comments such as, "Those photographs, the inquiry with the medical examiner was not to disturb you or to distress you but to show you just what kind of effort; what kind of effort it took to kill her." The prosecutor then continued to describe in detail the injuries the victim received in this case in her effort to persuade the jury that the defendant acted with the intent to kill necessary for first degree murder.

These arguments were entirely proper. As there were no witnesses to the murder, the Commonwealth's case necessarily relied on the injuries to the victim as proven through the crime scene and autopsy photographs in order to establish defendant's intent to kill. Moreover, the prosecutor did not use any improper "name calling" language in her arguments nor base any arguments on facts not in evidence. Accordingly, neither trial counsel nor [prior] PCRA counsel was ineffective for failing raise a claim regarding the prosecutor's comments.

PCRA Ct. Op. at 13-14.

Based on this record, we agree with the PCRA court's conclusion that

the Commonwealth's comments during its closing argument were permissible

- 14 -

oratory and did not rise to the level of prosecutorial misconduct that would have resulted in the denial of Appellant's right to a fair trial. *See Jones*, 191 A.3d at 835-36. As noted by the PCRA court, the Commonwealth did not base any of its closing arguments on facts that were not in evidence, nor was there improper name-calling language as alleged by Appellant. *See id.* Accordingly, Appellant failed to meet his burden of establishing that his underlying claim has arguable merit. Therefore, Appellant's layered ineffectiveness claim fails because neither trial counsel nor PCRA counsel was ineffective for failing to raise a meritless claim concerning the Commonwealth's closing argument. *See Sandusky*, 203 A.3d at 1043; *see also Davis*, 262 A.3d at 596. Therefore, Appellant is not entitled to relief. For these reasons, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/26/2024